MERCHANTS' NATIONAL BANK OF ST. PAUL *vs.* GEORGE McNEIR, as Receiver of the First National Bank of Anoka.

Argued July 8, 1892.  Decided Oct. 3, 1892.

**Negotiable Instruments—Bona Fide Purchaser.**

The title of an indorsee of negotiable paper for value, purchased before due, cannot be impeached, unless he has actual or constructive notice of facts such as to subject him to the imputation of fraud or bad faith in the transaction.

**Indorsement by Bank—Authority of Cashier.**

Where the cashier of a bank, who assumed to be acting as such, applied to another bank in the usual course of business, to discount a note produced by him, and regularly indorsed by him in his official capacity, *held,* that neither the fact that he appeared to be the payee and first indorser, and his bank the second indorser, nor that the avails of the note were received by him personally, were conclusive evidence that the indorsement of his bank was unauthorized or for his own accommodation.

Appeal by defendant, George McNeir, receiver of the First National Bank of Anoka, Minnesota, from an order of the District Court of Hennepin County, *Lochren,* J., made March 19, 1892, refusing a new trial.

This action was brought by the Merchants' National Bank of St. Paul, Minnesota, against George McNeir, who was appointed by the comptroller of the currency receiver of the First National Bank of Anoka, Minnesota.  The purpose of the action was to establish a claim in favor of the plaintiff bank against the estate of the First National Bank of Anoka, by reason of an indorsement of the Anoka Bank's name on a note for $10,000, made by Maria B. Nell to P. F. Pratt, indorsed by Pratt individually, and by "First National Bank of Anoka, by P. F. Pratt, Cashier," and discounted by plaintiff.

The case was tried January 18, 1892, before *Canty,* J., without a jury.  The findings were made February 13, 1892.  The court ordered judgment in favor of plaintiff.  A motion for a new trial was denied by Judge *Lochren,* who sat because of the absence of Judge *Canty.*

*Jackson & Atwater*, for appellant.

The facts show that the note was Pratt's own property; that the discount of it was his individual transaction; that the plaintiff was not justified in assuming that Pratt had authority to bind his bank by the indorsement of its name on the note.   We are unable to see any circumstances to distinguish the case from one in which an un-authorized use of the principal's name has been made by an agent for his own benefit, and in a transaction which was, on its face, outside of the business of the principal.   *Clafin* v. *Farmers' & Citizens' Bank*, 25 N. Y. 293; *West St. Louis Sav. Bank* v. *Shawnee Co. Bank*, 95 U. S. 557; *Anderson* v. *Kissam*, 35 Fed. Rep. 699; *American Exchange Bank* v. *Georgia Const. & Investment Co.*, 87 Ga. 651; *Merchants' Mutual Ins. Co.* v. *Excelsior Ins. Co.*, 4 Mo. App. 578. In these cases and others it is uniformly held that a bank official has not implied authority to certify his own check; to issue a cashier's check for his own benefit; to indorse the name of his bank on his own note, etc.   1 Morse, Banks, 202, 208, 297, 330,364.

*Young & Lightner*, for respondent.

If the plaintiff believed that Pratt was authorized to bind the Anoka Bank by his indorsement, and that he was acting for the bank in procuring the discount, and if that belief could in good faith be entertained by plaintiff, then the Anoka Bank is bound by the indorsement.   The procuring of this discount was within the general powers of Pratt, as cashier.   *Wild* v. *Bank of Passamaquoddy*, 3 Mason, 505; *West St. Louis Sav. Bank* v. *Shawnee Co. Bank*, 95 U. S. 557; 1 Morse, Banks, 326–330.

"Good faith" does not mean that the purchaser of negotiable paper is bound to exercise such care and caution as a prudent man would exercise.   Notice merely of facts that would put a prudent man upon inquiry, or even negligence, is not sufficient, to show bad faith. *Welch* v. *Sage*, 47 N. Y. 143; *Merchants' Nat. Bank* v. *Hanson*, 33 Minn. 40; *Magee* v. *Badger*, 34 N. Y. 247; *Freeman's Nat. Bank* v. *Savery*, 127 Mass. 78.   The facts that the note was payable to Pratt individually, and did not bear the marks of having been discounted by the Anoka Bank, or that the plaintiff gave a check for part of the

proceeds that was payable to Pratt individually, do not show that plaintiff had knowledge that would impair its claim to be a *bona fide* holder of the note. *Ihmsen* v. *Negley*, 25 Pa. St. 297; *Haldeman* v. *Bank of Middletown*, 28 Pa. St. 440; *Redlon* v. *Churchill*, 73 Me. 146; *Murray* v. *Lardner*, 3 Wall. 110; *Hotchkiss* v. *National Banks*, 21 Wall. 354; *Mitchell* v. *Catchings*, 23 Fed. Rep. 710; *Comstock* v. *Henneberry*, 76 Ill. 212; *Fox* v. *Bank of Kansas City*, 30 Kans. 441; *Nichols* v. *Sober*, 38 Mich. 678; *Johnson* v. *Way*, 27 Ohio St. 374.

VANDERBURGH, J. This action was tried by the court, and from its findings the following facts appear: One P. F. Pratt was during all the time, from the year 1883 until after January 16, 1889, the cashier of the First National Bank of Anoka, which bank, through its cashier, had, during all that time, transacted a large amount of business with the plaintiff.

On September 17, 1888, one Maria B. Nell had executed her promissory note to the First National Bank of Anoka for $5,000, with interest payable in four months from date without grace; and September 27th following, the plaintiff discounted this note, and paid the face value thereof, less the usual discount, to the First National Bank of Anoka, and the same was thereupon indorsed, and delivered to the plaintiff, and the Anoka bank thus became conditionally liable thereon as indorser. Afterwards, on the 16th day of January, 1889, the day before this note became due, the maker thereof, Mrs. Nell, executed another promissory note, payable to Pratt, whereby she agreed to pay to his order, six months thereafter, the sum of $10,000, with interest at 10 per cent., payable at the plaintiff's bank in St. Paul. The court further specifically finds as follows: That thereafter, on the 16th day of January, 1889, the day before the first-named note became due, Pratt appeared at the bank of the plaintiff with the last-mentioned note for $10,000, with the following indorsements thereon, all made in his handwriting: "P. F. Pratt;" and "First National Bank of Anoka, P. F. Pratt, Cr.,"—which was his usual way of signing his name as cashier of the Anoka bank. Plaintiff knew that all the indorsements were in the handwriting of Pratt, who then requested the officers of the plaintiff bank to discount the note

for the First National Bank of Anoka, and to take and retain the necessary part of the proceeds thereof to pay the amount due upon the first-mentioned note. Pratt assumed to act for the Anoka bank in the transaction, and the plaintiff thereupon, on his application, discounted the $10,000 note, deducted the amount due upon the other note, and gave Pratt its check for the difference, which was afterwards paid. It does not appear, and is not found, whether or not Pratt turned the proceeds over to the Anoka bank. Mrs. Nell afterwards paid to plaintiff the sum of $2,500 on the note, but no more has been paid thereon.

It is also found that "the plaintiff [meaning its officers] in good faith believed that said Pratt was acting as cashier of said bank in said transaction, and had no evidence to the contrary, and no reason to believe anything to the contrary, except what appeared by said proceedings, and said notes hereinbefore specified; that said plaintiff gave credit to said First National Bank of Anoka, and not to said Pratt, in all of said transactions." "Both of said notes were made by said Nell, and by her delivered to said Pratt, for his individual use and accommodation; but plaintiff had no notice or knowledge thereof, except as shown by the notes themselves, until after it had discounted them."

The principal question presented on this appeal is whether the facts found by the court warranted the conclusion that the Anoka bank is liable upon the note as indorser, the same having been duly protested.

It is not assigned as error that the findings of the court above quoted are not sustained by the evidence, and the foregoing statement contains all the material facts embraced in the findings bearing on the defendant's liability, so that, if there were any other facts or circumstances affecting the question of the plaintiff's good faith in the purchase of the note, they cannot be considered here.

The defendant insists that the plaintiff's cashier, who discounted the note in suit, was not justified upon these facts in supposing that Pratt was acting officially, as cashier of the Anoka bank, in procuring the money on the note; and that Pratt's statements or conduct in the transaction were immaterial, in view of the fact that the note

showed on its face that it appeared to be his individual note, and he had no authority in fact to make an accommodation indorsement thereon in behalf of the bank.

In view of the fact that Pratt was the acting cashier of the Anoka bank, entitled to make indorsements in this form of paper belonging to the bank, and presented himself in that capacity in this instance, the discussion is substantially narrowed down to the question whether the paper itself bore marks of suspicion sufficient to affect the title of the plaintiff as a purchaser in good faith, which upon the facts would otherwise be presumed. But in determining this case we cannot separate the different parts of the transaction, and consider the paper apart from the circumstances under which it was presented. Pratt assumed to be acting in his official capacity, and appeared to be engaged in the business of his bank.

He proposed to take up the note which he had before rightfully negotiated in behalf of the bank as cashier, and to substitute another executed by the same party. And the cashier of the plaintiff bank, as the court finds, in good faith believed that Pratt was acting officially for the Anoka bank, and the evidence sustains this finding. If the new note had been of the same amount as the old one taken up, the fact that it ran to Pratt would hardly be claimed to be sufficient to excite suspicion. And so, if the note had been subsequently negotiated by plaintiff, and had passed in the regular course of business into the hands of a remote indorsee, it would hardly be claimed that such indorsee was not a *bona fide* purchaser, either on the ground of notice from the note itself, or that he was bound to have instituted a preliminary inquiry as to the authority of Pratt to make the second indorsement as cashier. The fact that Pratt appeared to be the first indorser, and the bank the second indorser, was not, of itself, a circumstance so extraordinary or suspicious as to make the case one of gross negligence on the part of the plaintiff, and subject it to the imputation of bad faith in receiving the paper. Nor, in the face of the finding of the good faith of the officers of the plaintiff in the transaction, did the circumstance that the surplus, over the amount due upon the old note, was paid directly to Pratt, either in currency or by check running to him, amount to notice of

Pratt's intended fraud upon his bank, or make the plaintiff a purchaser *mala fide* of the note. It is not sufficient, under the rule applied to the transfer of negotiable paper under the law merchant, that there be circumstances of suspicion such as would put a careful purchaser upon inquiry. The circumstances must be so pointed and direct as to amount to evidence of *mala fides*, in the absence of inquiry, or such as to be *prima facie* inconsistent with any other view than that there is something wrong in the title, and thus amount to constructive notice. 1 Daniel, Neg. Inst. (4th Ed.) § 796; 2 Rand. Com. Paper, §§ 998, 1001; Tied. Com. Paper, § 289; *Freeman's Nat. Bank* v. *Savery*, 127 Mass. 78, 79. In *Welch* v. *Sage*, 47 N. Y. 143–146, the court say: "The law may be regarded as settled that a purchaser for value advanced, of negotiable paper, including bonds, is not bound to exercise such care and caution as wary, prudent men would exercise. Negligence will not impair his title. It is a question simply of good faith in the purchaser. Unless the evidence makes out a case on which a jury would be authorized to find fraud or bad faith in the purchase, it is the duty of the court to direct a verdict."

A stricter rule would seriously embarrass the transfer of negotiable paper.

Upon the findings of fact in the case, we think the legal conclusion reached was proper, and the order denying a new trial is affirmed.

(Opinion published 53 N. W. Rep. 178.)