FRED L. ROSEMOND *vs.* JOHN GRAHAM. ·

Argued June 6, 1893. Affirmed July 26, 1893.

**Parties Plaintiff in an Action on a Negotiable Note.**

The indorsee of a promissory note may maintain an action thereon against the maker although others are beneficially interested with the plaintiff therein.

**Negotiable Note Transferred as Collateral Security for an Antecedent Debt.**

An indorsee of negotiable paper, taken before maturity as collateral security for an antecedent debt, in good faith, and without notice of defenses, such as fraud, which might have been available as between the original parties, holds the same free from such defenses.

**Evidence Considered.**

Evidence *held* sufficient to show that the note in suit was thus taken in good faith, and without notice of the fraud alleged in defense.

Appeal by defendant, John Graham, from a judgment of the District Court of Ramsey County, *J. J. Egan,* J., entered December 21, 1892, in favor of plaintiff for $794.10.

On October 20, 1890, defendant made and delivered to L. H. Maxfield his negotiable promissory note for $625 with interest, due ninety days thereafter. The note was given for the purchase price of fifty shares of the stock of the Northwestern Autographic Register Company, that day sold by Maxfield to Graham at $12.50 per share. The face value of the shares was $50 each. The principal assets of the company consisted of an interest in a patent right for this register, and defendant claimed to have been deceived by false representations and defrauded in the transaction, so that the note in Maxfield's hands would be voidable. Maxfield was owing Charles M. Campbell, William A. Campbell and Fred L. Rosemond $25,000 for a large amount of stock in this same corporation, and he indorsed Graham's note, and sent it, on October 25, 1890, to Rosemond at Chicago, Ill., as collateral security for the payment of his debt to them. On the trial, after the evidence was all in, the Judge directed a verdict for plaintiff. The defendant made a case con-

taining exceptions and moved for a new trial. This was denied, and judgment was entered on the verdict. From that judgment defendant appeals.

*Warner, Richardson & Lawrence,* for appellant.

The court below erred in taking the case from the jury. Under the evidence as it stood at the conclusion of the trial no contract had been consummated between Maxfield and the three eastern men in relation to the note. The evidence at best tended to show neither a sale nor a pledge, but merely an agency. The circumstances in evidence coupled with such inferences as the jury could legitimately draw, were sufficient to sustain a finding, that plaintiff and the two Campbells did not obtain the note for a valuable consideration, and without notice to any of them that it was obtained by fraud.

The testimony of Rosemond was at war with that of Maxfield as to whether the note was transferred in payment, or in pledge, that is, whether it was sold, or pledged. There had been no meeting of minds down to the date of the trial. *Lanz* v. *McLaughlin,* 14 Minn. 72, (Gil. 55;) *Steele* v. *Etheridge,* 15 Minn. 501, (Gil. 413;) *Bryant* v. *Lord,* 19 Minn. 396, (Gil. 342;) *Eagan* v. *Faendel,* 19 Minn. 231, (Gil. 191.)

The evidence all really came down to this, whether four men can engage in a conspiracy to cheat, form a plan of execution, enter on it, devise the false token, find it successful, then three of them sell out their interest in the scheme to the fourth, and can then claim to be *bona fide* innocent holders of the notes taken by him as the proceeds of the established business, when delivered in pledge for the purchase money he owes.

In such cases after the defendant has introduced evidence sufficient to establish the fraud, then the plaintiff must introduce some evidence warranting belief that he gave value, without notice of such fraud. In cases of actual purchase, an actual payment of the purchase price, an actual parting with something, has been held to warrant inference that it was done without notice; but we can find no case, where nothing has been parted with, and yet plaintiff has been allowed to rest his case, on the bare presumption that because

he had received the paper in pledge for an antecedent debt, he must therefore be supposed to have received it without notice, and in good faith. In such a case the plaintiff's conduct furnishes no foundation whatever for any inference of want of notice or of good faith, and the counter inference that the original perpetrator of the fraud has put away the paper because he could not enforce it himself, is left outstanding and in full force. *Newton* v. *Newton*, 46 Minn. 33; *Munroe* v. *Cooper*, 5 Pick. 412; *Frank* v. *Blake*, 58 Iowa, 750; *Hamilton* v. *Marks*, 63 Mo. 167; *Swett* v. *Hooper*, 62 Me. 54; *Giberson* v. *Jolley*, 120 Ind. 301; *Roberts* v. *Lane*, 64 Me. 108; *Vosburgh* v. *Diefendorf*, 119 N. Y. 357; *Canajoharie Nat. Bank* v. *Diefendorf*, 123 N. Y. 191; *Shain* v. *Goodwin*, 46 Fed. Rep. 564; *Goodwin* v. *Smith*, 72 Ind. 113; *Zook* v. *Simonson*, 72 Ind. 83; *Smith* v. *Popular Loan & Bldg. Ass'n*, 93 Pa. St. 19; *Totten* v. *Bucy*, 57 Md. 446; *Wright* v. *Larsen*, 51 Minn. 321; *Cummings* v. *Thompson*, 18 Minn. 246, (Gil. 228;) *Cochran* v. *Stewart*, 21 Minn. 435; *Mac Laren* v. *Cochran*, 44 Minn. 255; *Merchants' Exchange Bank* v. *Luckow*, 37 Minn. 542; *Herrick* v. *Swomley*, 56 Md. 439.

The question whether a note obtained by fraud can be enforced by one taking it merely in pledge for an antecedent debt, without notice of such fraud, has been much considered. We shall not attempt to present all that has been urged *pro* and *con* on that point. It has been held twice by this court that such a party occupies the shoes of the original holder, and those decisions have remained unquestioned many years. *Becker* v. *Sandusky City Bank*, 1 Minn. 311, (Gil. 243;) *Baze* v. *Arper*, 6 Minn. 220, (Gil. 142.)

*Lusk, Bunn & Hadley*, for respondent.

Maxfield sent to Rosemond a number of notes payable to him and indorsed by him in blank. The note in this case was so sent among others. Rosemond received the note and wrote over the blank indorsement the words, "Pay to the order of Fred L. Rosemond." The legal title to the note passed to Rosemond, though of course he was under obligation to account to the Campbells for their interest in the proceeds. The legal holder of a negotiable note may sue the maker in his own name and recover the contents. *Vanstrum* v. *Liljengren*, 37 Minn. 191; *Elmquist* v. *Markoe*, 45 Minn. 305.

The notes were taken by Rosemond as collateral security, or pledge, and not as an absolute sale.

The question whether the transfer of negotiable paper, in the usual course of business before maturity in good faith as collateral security for a pre-existing debt without other consideration, cuts off defenses that would be good between maker and payee, is one upon which the authorities are not harmonious. The statement that this court has twice decided this point is not correct. The question has not been passed upon in any reported case in which the question was involved.

In *Becker* v. *Sandusky City Bank*, 1 Minn. 311, (Gil. 243,) Judge Sherburne, after deciding the case in favor of the respondent, goes out of his way to give his opinion as to the effect of indorsing negotiable paper as collateral security for a pre-existing debt, and to attack the opinion of Judge Story in *Swift* v. *Tyson*, 16 Pet. 1. But the point was not involved in the case. If it had been, and the court had followed the views expressed by Judge Sherburne, the case would have been reversed, whereas it was affirmed. In the case of *Baze* v. *Arper*, 6 Minn. 220, (Gil. 142,) the question of the effect of indorsing negotiable paper as collateral security is in no way decided. There was no question of negotiable paper in the case at all. The rule laid down in the opinion in that case was that the payment of a pre-existing debt is not such a consideration, as places the grantee of land in the position of an innocent purchaser. And further, this court long ago refused to apply the rule of *Baze* v. *Arper*, to negotiable paper. *Stevenson* v. *Hyland*, 11 Minn. 198, (Gil. 128.)

The question is one that has been discussed in the various courts of the country with different results down to 1880, when it was taken up by the Supreme Court of the United States, and an elaborate discussion of the question and review of the authorities was given in three opinions, extending over forty-five pages of its reports, with a view to finally settling the question, and nothing need be added to the opinions in that case. *Railroad Co.* v. *National Bank*, 102 U. S. 14.

It is stated in Colebrooke on Collateral Securities, that this rule has been established by the courts of last resort in the following states:

California, Connecticut, Georgia, Illinois, Indiana, Louisiana, Maryland, Massachusetts, New Jersey, Rhode Island, South Carolina, Texas and Virginia, and also in England and Canada, and he cites a long list of cases to support this statement. Jones on Pledges, note to § 110, enumerates the States which follow the rule in *Railroad Co.* v. *National Bank,* and in addition to the list given above he includes Delaware, Michigan, Mississippi, Missouri, North Carolina and Vermont. This rule is indorsed in Daniel, Negotiable Instruments, § 831a; 2 Randolph, Commercial Paper, § 465.

In this State where the rule is yet to be established, it is important that we should have the same rule in the State court that exists in the United States courts, for the United States courts do not follow the rule in the various states in matters of commercial law, and it would lead to great injustice and confusion to have one rule for commercial paper in the State courts and another in the United States court, and it would in many cases be a discrimination against our own citizens. *National Bank of C.* v. *Chicago, B. & N. R. Co.,* 44 Minn. 224.

If in an action by an indorser against the maker a negotiable note is shown to have been obtained by fraud, the presumption arising merely from possession of the instrument, that the holder in good faith paid value, is so far overcome that he cannot have judgment unless it appears affirmatively that he in fact purchased for value. That fact being established, he will be entitled to recover, unless it is proved that he purchased with actual notice of defect in title or in bad faith, implying guilty knowledge or wilful ignorance. The authorities on this question are carefully discussed in the case of *Davis* v. *Bartlett,* 12 Ohio St. 534, which was followed in *Tod* v. *Wick,* 36 Ohio St. 390. The same rule is laid down in *First Nat. Bank* v. *Dawson,* 78 Ala. 71; *Henry* v. *Sneed,* 99 Mo. 422; *Battles* v. *Laudenslager,* 84 Pa. St. 446; *Kellogg* v. *Curtis,* 69 Me. 214.

The statement of counsel that if the circumstances under which the note was taken are such as to excite suspicion, then the presumption of good faith is overcome, is not correct. The true rule regarding commercial paper is, that the circumstances must be such as to amount to constructive notice of fraud, or evidence of *mala fides.* Mere suspicion will not overcome the presumption of good faith

where a note is transferred for a valuable consideration. *Goodman* v. *Simonds*, 20 How. 343; *Murray* v. *Lardner*, 2 Wall. 110; *Carpenter* v. *Longan*, 16 Wall. 271.

It is decided in *Wright* v. *Larson*, 51 Minn. 321, that it is incumbent upon the holder of a second chattel mortgage, in order to take preference over a prior unrecorded chattel mortgage to prove that he took it for value and in ordinary course of business, and there must not appear any opposing suspicious circumstances. This is doubtless the correct rule regarding choses in actions, but it is not the rule regarding negotiable paper, as has been clearly recognized by this court. *Merchants' Nat. Bank* v. *McNeir*, 51 Minn. 123.

DICKINSON, J. The defendant executed to one Maxfield his negotiable promissory note. The case before us shows that Maxfield was indebted to the plaintiff and two other persons, William A. and Charles M. Campbell. The debt of Maxfield being due, he indorsed the defendant's note in blank, and before its maturity delivered it to the plaintiff, who wrote over Maxfield's blank indorsement in the usual form a direction that payment be made to himself, the plaintiff. As such indorsee, the plaintiff prosecutes this action on the note against the maker. At the trial, upon the evidence presented by both parties, the court directed a verdict for the plaintiff. The correctness of that ruling is in question on this appeal.

While it appears that the indorsement to the plaintiff was made on account of the whole indebtedness to the plaintiff and the Campbells, and that they all had a beneficial interest in the paper, it also appears that as between themselves it had been committed to the plaintiff to act for their common interest, and according to his own discretion, in obtaining payment or security from Maxfield. It does not prejudice the defendant, and constitutes no defense, that the Campbells are not parties to the action. *Elmquist* v. *Markoe*, 45 Minn. 305, (47 N. W. Rep. 970,) and cases cited. The defendant sought to show in defense, and now claims to have shown, that Maxfield induced him to execute the note by fraudulent representations. The ruling of the court now under review was that this defense was not available as against the plaintiff. That is the important question in the case. Its solution depends upon the question whether the plaintiff so acquired and holds the note that he en-

joys the legal advantage and protection ordinarily attending the indorsement of negotiable paper to *bona fide* purchasers. Although Maxfield's testimony, taken alone, may tend to show a sale of the note to the plaintiff, yet it is apparent from the transaction itself, which was by letters between the parties, which are before us in the case, that the note was transferred as collateral security for the existing debt. The subsequent understanding of Maxfield, or the manner in which he afterwards treated the matter could not change the obvious nature of the prior transaction. Hence we come to the question whether a creditor who *bona fide* receives by indorsement negotiable paper not yet due as collateral security for a prior indebtedness holds the same free from any defense of fraud which might have been available as between the original parties. The decisions have long been at variance, and the reasons which may be advanced in support of diverse conclusions have been so fully stated, and so often reiterated, that we need not restate them, and will not attempt to add to them. The question has never been decided in this court. In the following jurisdictions it has been settled that the holders of such collateral securities enjoy the advantages peculiar to *bona fide* purchasers of negotiable paper: California, Connecticut, Georgia, Illinois, Indiana, Louisiana, Maryland, Massachusetts, New Jersey, Rhode Island, South Carolina, Texas, Virginia, the Federal Courts, England and Canada. About an equal number of state courts have declared the contrary rule. The subject was fully discussed, and the rule finally settled as first above indicated in the Federal Courts in the case of *Railroad Co.* v. *National Bank*, 102 U. S. 14. The modern law writers very generally recognize this as the prevailing rule, and among late decisions in jurisdictions where the opposite doctrine had long been settled may be found expressions indicating that the courts would have followed the law as declared by the Supreme Court of the United States if they had not been bound by their own former decisions. See *Smith* v. *Bibber*, 82 Me. 34, (19 Atl. Rep. 89.) Most of the authorities are cited and the subject well presented in Jones, Pledges, 107, 111, *et seq.* See, also, Bigelow, B. & N. 497. This being a matter of general commercial law, the rulings in the Federal Courts will everywhere follow that of the Supreme Court, as above indicated, irre-

spective of what the state courts may declare to be the law in their respective jurisdictions. Diverse rules of law, affecting ordinary commercial transactions, cannot be finally declared and enforced by different courts within the same jurisdiction without resulting evils too great to be disregarded. Without assuming now to determine as to which side of the question is supported by the better reason, it is considered that our decision should be such that there shall be but one rule of law recognized and enforced in all the courts in this state. We therefore decide that the indorsee of negotiable paper taken before maturity as collateral security for an antecedent indebtedness, in good faith, and without notice of defenses, such as fraud, which might have been available as between the original parties, holds the same free from such defenses. We the more unhesitatingly declare this as the rule of law because, in addition to the great weight of authority in its favor, we believe that it is in accordance with the understanding and usage which have generally prevailed in commercial circles.

If, then, the plaintiff became an indorsee of the note *bona fide* without notice of the fraud claimed to have been involved in its execution, that defense is unavailable. We will assume that, if fraud was shown, the burden rested on the plaintiff to prove that he had no notice of it. The notice which the indorsee must have in order to prevent his enjoying the advantage of a *bona fide* purchaser must be such as to charge him with fraud or actual bad faith. *Merchants' Nat. Bank* v. *McNeir*, 51 Minn. 123, (53 N. W. Rep. 178.) We do not see that the plaintiff testified upon this subject, but it appeared from the testimony of Maxfield that the plaintiff knew nothing about the circumstances of the transaction between Maxfield and the defendant in the course of which the note was given. This testimony is not opposed by any evidence, and we see nothing in the case which would justify the conclusion that the plaintiff had any notice of the fraud, if there was any. He, as well as the Campbells, resided in a distant state. The communications connected with the indorsement and sending of the note to the plaintiff (which were all between Maxfield and the plaintiff alone) disclosed nothing as to the circumstances of the procuring of the note by Maxfield. Hence, while there is not much affirmative evidence of the

absence of notice to the plaintiff of any fraud, we think there was enough to make a *prima facie* and credible case in his favor; and, being unopposed, as we consider, by evidence to the contrary, our conclusion is that the court was right in directing a verdict for the plaintiff.

Judgment affirmed.

GILFILLAN, C. J., did not sit.

(Opinion published 56 N. W. Rep. 38.)