## ANDREW C. HAUGAN v. GUST. F. SUNWALL.[1]

February 27, 1895.

No. 9146.

**Negotiable Instrument as Collateral Security for Antecedent Debt.**

The rule laid down in Rosemond v. Graham, 54 Minn. 323, 56 N. W. 38, that the indorsee of negotiable paper taken before maturity as collateral security for an antecedent indebtedness, in good faith, and without notice of defenses which might have been available between the original parties, holds the same free from such defenses, followed and applied.

**Same—Good Faith.**

By the words "good faith" is meant the good faith of the indorsee simply.

**Same—Evidence.**

Upon the testimony offered and received, as well as that offered and excluded, it is *held,* that there was nothing tending to indicate fraud or bad faith on plaintiff's part when taking the note in question.

**Same—Power of Bank Cashier to Transfer Note.**

Whether the general rule in respect to the powers of bank cashiers to negotiate, manage, and dispose of notes and securities held by the bank is applicable to the facts in this case is immaterial, for at most the act of the cashier, when transferring and indorsing the note to plaintiff, was merely voidable. His act can only be questioned by the representative of the bank, its assignee in insolvency.

**Same—Fraudulent Preference as a Defense.**

In an action brought upon a negotiable promissory note by an indorsee before maturity, the maker cannot avail himself of a defense based upon

[1] Reported in 62 N. W. 398.

the claim that the provisions of the insolvency laws of the state relating to fraudulent preferences were violated, when the note was transferred to such indorsee.

Action in the district court for Hennepin county by the indorsee against the maker of a promissory note for an unpaid balance of $2,300. The defense set up that on June 24, 1893, plaintiff, in violation of the charter of the city of Minneapolis, had on deposit on open account $12,000 of the moneys in his hands as treasurer of the city of Minneapolis with the bank to which the note was payable; that the note in question, together with other notes, which constituted substantially all the assets of the bank, without authority of the directors or officers of said bank, were delivered as security for the money so deposited, and without consideration; that plaintiff had reasonable cause to and did believe said bank to be insolvent, and that defendant on said day had on deposit in said bank on open account a sum exceeding $800, no part of which has been paid. At the trial the evidence showed there was at the time of the transfer of the note a balance of about $800 on deposit, due the defendant upon an open account in the name of "W. B. Mohler, Agent"; that the transfer was made without direction or authority, save such as was possessed by the cashier in virtue of his office; that this and other notes, in all aggregating about $17,000, were transferred to the plaintiff early in the morning, about the hour of opening the bank, and in a great hurry. The court refused to instruct the jury to return a verdict for the defendant, and directed a verdict for the plaintiff for the whole amount asked. For the reason that, at the trial, evidence was excluded bearing on the questions whether the cashier had power to transfer the note, and whether the circumstances of the transfer were sufficient to excite the suspicion of the plaintiff,—evidence which should have gone to the jury,—the court, Smith, J., granted defendant's motion to set aside the verdict for plaintiff and for a new trial. From this order, plaintiff appealed. Reversed.

*A. Ueland,* and *Benton, Roberts & Brown,* for appellant.

Plaintiff was the legal owner of the note, and could sue. The note was transferred in good faith. The question whether the transfer was in violation of the insolvency law is not involved, and could be raised only by the assignee in aid of that law. Smith v. Deidrick,

30 Minn. 60, 14 N. W. 262; Berry v. O'Connor, 33 Minn. 29, 21 N. W. 840; Smith v. Brainerd, 37 Minn. 479, 35 N. W. 271. The good faith required is good faith by the purchaser. Merchants' Nat. Bank v. McNeir, 51 Minn. 123, 53 N. W. 178. The question is whether the paper was taken without knowledge of equities or defenses on the part of the maker. Evidence of the insolvency of the bank was therefore immaterial. Goodman v. Simonds, 20 How. 343. A note purchased before maturity for value is acquired in the usual course of business. Kellogg v. Curtis, 69 Me. 212; 1 Daniel, Neg. Inst. § 780; Elias v. Finnegan, 37 Minn. 144, 33 N. W. 330. The maker of a note cannot be permitted to litigate concerning its transfer, except as to the genuineness of the indorsements, and as to his being protected in making payment. 1 Daniel, Neg. Inst. §§ 93, 227, 242; Drayton v. Dale, 2 B. & C. 293; City Bank v. Perkins, 29 N. Y. 554. The cashier of a bank has full power of disposition of all the notes and bills of the bank. Morse, Banks, §§ 157, 158a, 158g, 160; 1 Daniel, Neg. Inst. § 392; Wild v. Bank of Passamaquoddy, 3 Mason, 505, Fed. Cas. No. 17,646; Fleckner v. Bank, 8 Wheat. 338, 360; Merchants' Bank v. State Bank, 10 Wall. 604; West St. Louis Bank v. Shawnee Bank, 95 U. S. 557; Cochecho Bank v. Haskell, 51 N. H. 116; City Bank v. Perkins, 29 N. Y. 554; Bank of the State v. Wheeler, 21 Ind. 90.

*Marshall A. Spooner* and *Armstrong Taylor,* for respondent.

The note was not taken in the usual course of business. Roberts v. Hall, 37 Conn. 205; Elias v. Finnegan, 37 Minn. 144, 33 N. W. 330. The cashier was not authorized, without authority from the directors, to turn over the note to the plaintiff. Hoyt v. Thompson, 5 N. Y. 320; First Nat. Bank v. Ocean Bank, 60 N. Y. 287; Belden v. Meeker, 47 N. Y. 311; West St. Louis Bank v. Shawnee Bank, 95 U. S. 559; Elliot v. Abbot, 12 N. H. 556; Bank v. Reed, 1 W. & S. (Pa.) 101. It is only for a legitimate purpose, and in the usual course of business, that the cashier is authorized to transfer negotiable securities. City Bank v. Perkins, 29 N. Y. 569; Hays v. Hathorn, 74 N. Y. 486. The defendant may show title in a third person. Sanford v. Sanford, 45 N. Y. 726; Osborn v. McClelland, 43 Ohio St. 296, 1 N. E. 644; Proctor v. Cole, 104 Ind. 380, 3 N. E. 106, and 4 N. E. 303. It is not claimed that plaintiff personally owned the note, but

merely that he could sue as the trustee of an express trust, and as a person in whose name the contract was made for the benefit of another. The money deposited with the bank, and on account of which he took the note, came into his hands as treasurer of the city of Minneapolis. The bank was not an authorized depository of city funds, and the treasurer was himself deriving the benefit of the interest on the deposit. His deposit was an appropriation of the city's funds in violation of the criminal law. Const. art. 9, § 12; G. S. 1894, §§ 6663, 6709. But the fund was still the city's. The plaintiff acquired no interest in it, for "no man shall profit by his own wrong." State v. McFetridge, 84 Wis. 473, 54 N. W. 1. The city was secured against the loss of the fund by the bond of the treasurer. The plaintiff could not hold the note as an individual, because the moneys were never his, nor for the benefit of the city, because the city was not a party to the transaction, and because the contract was not made in the name of the plaintiff for the benefit of the city.

COLLINS, J. This appeal is from an order granting defendant's motion for a new trial after a verdict had been rendered against him, by direction of the court, for the full amount claimed to be due on his negotiable promissory note. This note had been made payable to the order of the American Exchange Bank, and before maturity had been transferred, indorsed, and delivered by the cashier of the bank to the plaintiff as collateral security for money belonging to the city of Minneapolis, which the latter had previously deposited in the bank in his own name as treasurer. The indorsement and delivery were made June 24, 1893. Three days afterward the bank closed its doors, and on July 1 it made an assignment for the benefit of its creditors under the insolvency laws of the state. The principal question in the case is whether the court below erred when it excluded from the jury all consideration of certain evidence introduced by defendant which tended to show that at the time of the transfer of the note to plaintiff, and up to the time the bank suspended payment, the former had a sum of money exceeding $800 on deposit therein. The object of the evidence was to render available to defendant as a set-off pro tanto the amount of the deposit. It was undisputed that plaintiff had no knowledge of the fact when he took the note. As it stands conceded that the indorse-

ment and delivery were before the maturity of the note, and the consideration therefor was a pre-existing debt, the rule laid down recently in the case of Rosemond v. Graham, 54 Minn. 323, 56 N. W. 38, is exactly in point. It was there held, after a thorough examination of the authorities, that the indorsee of negotiable paper taken before maturity as collateral security for an antecedent indebtedness, in good faith, and without notice of defenses which might have been available between the original parties, holds the same free·from such defenses. The ruling whereby the evidence in respect to the deposit account was taken from the jury was correct if plaintiff took the note in good faith, and by this his good faith simply is meant. His title cannot be impeached unless he had actual or constructive notice of facts such as to subject him to the imputation of fraud or bad faith in the transaction. Merchants' Bank v. McNeir, 51 Minn. 123, 53 N. W. 178. We fail to discover in the testimony offered and received, or in that offered and excluded, anything which could be used by defendant tending to indicate fraud or bad faith on plaintiff's part. The transaction took place early in the morning, but the bank was open and doing business. The plaintiff dealt with the cashier, and the court below seems to have thought that the transfer should have been authorized by the board of directors. But the cashier of a bank is virtute officii generally intrusted with its notes and securities, and is held out to the world by it as its general agent in the negotiation, management, and disposal of them. Prima facie, therefore, he must be deemed to have authority to transfer and indorse negotiable securities held by the bank, for its use and in its behalf. Wild v. Bank of Passamaquoddy, 3 Mason, 505, Fed. Cas. No. 17,646, a leading case; Morse, Banks, §§ 157, 158a, 158g, 160; 2 Am. & E. Enc. Law, 114. See, also, Merchants' Bank v. McNeir, supra. It is claimed, however, by counsel for defendant, that none of the authorities go to the extent of holding that a cashier has power, without express written authority from the board of directors, to transfer and indorse its notes and bills as security for pre-existing debts, citing Hoyt v. Thompson, 5 N. Y. 320. Even if this be the law, the act of the cashier here questioned was not void. It was merely voidable, and can only be questioned by the assignee in insolvency, not by defendant, for as to him plaintiff's title is good. The trial court seemed to be of the

opinion, when granting a new trial, that the insolvency of the bank, the cashier's knowledge of it, and that by a transfer of the note under such circumstances he was giving a preference to a creditor forbidden by the insolvency law, was perpetrating a fraud upon other creditors, could be shown by defendant to prevent a recovery. It is well settled in this jurisdiction that such a defense is not available to defendant. Berry v. O'Connor, 33 Minn. 29, 21 N. W. 840; Smith v. Brainerd, 37 Minn. 479, 35 N. W. 271. The assignee of the bank can alone inquire into transactions in violation of the provisions of the insolvency law. If it were otherwise, we might witness an unsuccessful proceeding on the part of an assignee to avoid a transaction of this character on the ground of a fraudulent preference, the maker of the note not being a party to such proceeding, and the next day see such maker successfully defend on precisely the same grounds in an action brought against him by an indorsee to recover on the note; the result being that we should have the note afloat in the world without a holder who could enforce its payment. There is nothing in the contention that plaintiff is not the real party in interest, and entitled to maintain the action.

Order reversed.