# GEORGE GOEDHARD AND O. W. MICHALSON, DOING BUSINESS AS GOEDHART-MICHALSON MOTOR COMPANY v. A. FOLSTAD,. A. J. FOLSTAD AND J. O. FOLSTAD.[1]

October 12, 1923.

No. 23,530.

**Evidence conclusive that plaintiffs held notes in due course.**

1. Action on two promissory notes. Plaintiffs claimed to be holders thereof in due course. Defense that the notes had been procured by fraudulent misrepresentations of which plaintiffs had knowledge, and that the contract had been rescinded. *Held* that the undisputed evidence conclusively established that plaintiffs were holders in due course under the Negotiable Instruments Act.

**Court should have directed verdict for plaintiffs.**

2. The evidence that the notes had their inception in fraud was sufficient to cast upon plaintiffs the burden of showing that they were holders in due course, but, as they disclosed fully the transaction in which they acquired them and the record discloses nothing which would justify a finding of bad faith, it became the duty of the court to direct a verdict.

**When undisputed evidence cannot be disregarded.**

3. Clear, positive and undisputed testimony, not improbable or contradictory, given by unimpeached witnesses, cannot be rejected or disregarded, unless the evidence discloses facts and circumstances which furnish a reasonable ground for doing so.

**Note which carries attorney's fee and increased interest, if unpaid at maturity, negotiable.**

4. A note is not rendered non-negotiable by a provision for reasonable attorney's fees if not paid at maturity, nor by a provision for an increase in the rate of interest if not paid at maturity, but under our statute a provision for an increase in the rate of interest after maturity works a forfeiture of all interest.

**Minnesota contract.**

5. The contract was a Minnesota contract.

[1]Reported in 195 N. W. 281.

Judgment for plaintiffs notwithstanding verdict.

    6. The verdict could not be sustained even if all defenses to the notes were available against plaintiffs, for defendants did not rescind the contract nor attempt to do so, and there is no evidence as to the amount of the damages, if any, which they sustained by reason of the alleged fraud.

Two actions in the district court for Pipestone county to recover $2,500 and $3,000, respectively, upon two promissory notes and attorneys' fees. The cases were tried together before Nelson, J., who at the close of the testimony denied plaintiffs' motion for a directed verdict, and a jury which returned a verdict in favor of defendants in each action. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, plaintiffs appealed. Reversed and judgment entered in favor of plaintiffs without interest.

*George P. Gurley* and *Gamble & Luddy*, for appellants.
*James H. Hall* and *Charles Dealy*, for respondents.

TAYLOR, C.

On April 12, 1920, the defendants, residents of Ruthton in Pipestone county, Minnesota, entered into a contract with the San Benito Land Company of Kansas City, Missouri, for the purchase of a tract of land in the state of Texas, and as a part of the transaction executed to the land company two promissory notes, one for the sum of $2,500 payable July 12, 1921, and the other for the sum of $3,000 payable October 12, 1921. The land company indorsed these notes without recourse to G. F. Hutchinson, its agent who had negotiated the sale of the land, and Hutchinson indorsed them to plaintiffs who were dealers in automobiles at Sioux Falls, South Dakota. In September, 1921, plaintiffs brought suit on the first note, and in November, 1921, brought suit on the second note. Defendants asserted in their answers that the notes were procured by means of false representations made by Hutchinson concerning the character, condition and value of the Texas land; that they had rescinded the contract; and that plaintiffs purchased the notes with full knowledge of all the facts. Plaintiffs asserted in their replies that they

were holders of the notes in due course. The two actions were consolidated and tried together. The court submitted two questions to the jury: Whether the notes were procured by fraudulent misrepresentations; and whether plaintiffs were good faith holders of them. He instructed the jury, in substance, that plaintiffs were entitled to a verdict if the notes were not procured by misrepresentations, or if the plaintiffs were good faith purchasers, but that defendants were entitled to a verdict if the notes were procured by misrepresentations and plaintiffs were not good faith purchasers. The jury returned a verdict for defendants. Plaintiffs appeal from an order denying their motion in the alternative for judgment notwithstanding the verdict or for a new trial.

Plaintiffs claim that they are holders of the notes in due course and that the evidence will not justify or sustain a finding to the contrary.

It appears that Hutchinson resided in Sioux Falls in the summer and fall of 1920, and that he had two business deals with plaintiffs. Plaintiffs disclosed these deals fully. Hutchinson came to them to buy an automobile. They did not then know him, but the representative of an automobile company, with whom they had done business for some three years, told them that he had grown up with Hutchinson from boyhood and recommended him highly. On July 1, 1920, plaintiffs sold Hutchinson a Stutz car for the sum of $3,960 and took his promissory note in the sum of $2,185, secured on the car, for a part of the purchase price. In September, 1920, after negotiations lasting several days, the second deal was consummated. Hutchinson had the two notes in controversy indorsed by the land company. By inquiring of a Minnesota bank plaintiffs learned that the makers were responsible, plaintiffs knew that the notes had been given on the purchase of land in Texas and that the makers resided in Minnesota and the payee in Missouri, but had no other or further knowledge concerning the transaction in which they had been given. As a result of the negotiations with Hutchinson, plaintiffs, on September 20, 1920, sold to him a Stewart truck for the sum of $2,150 and an Oakland roadster for the sum of $1,165, and canceled and surrendered to him his prom-

issory note for the sum of $2,185. These three items amounted to the sum of $5,500, and in payment therefor Hutchinson indorsed the two notes in controversy, of the face value of $5,500, and delivered them to plaintiffs who accepted them as such payment. Both parties waived the interest on the notes held by them respectively. Shortly after obtaining these notes, plaintiffs deposited them together with other notes in the Security National Bank of Sioux Falls as collateral security for loans made them by the bank. While the foregoing facts rest mainly on the testimony of the two plaintiffs, there is no evidence contradicting or disputing them in any respect.

A week or two before the first note became due, plaintiff Michalson and the cashier of the bank which held it as collateral security drove to the residence of defendants at Ruthton and saw A. Folstad, who is one of the defendants and the father of the other two defendants. Both parties agree that the conversation was wholly between the cashier and Folstad and that Michalson took no part in it, but disagree as to what was said. According to the cashier he showed the note to Folstad, saying that the bank held it as collateral, and while it was not yet due that he wished to know whether it would be paid at maturity; that Folstad did not dispute the note, but said they were not prepared to pay it; that thereupon he offered to give an extension of time on receiving security; that Folstad expressed a wish to talk to Hutchinson before doing anything; that he suggested that Folstad and the two boys come to Sioux Falls the next day and that he would have plaintiffs and Hutchinson come to the bank where they could all talk over the situation; and that Folstad agreed to do so. According to Folstad the cashier showed him the note and he refused to pay it, saying that Hutchinson had "made a false deal out of it." He admits, however, that the cashier offered to extend the time of payment if given security, and that he promised that he and his sons would go to Sioux Falls the next day to fix it up, and also admits that they did not do so.

Some two weeks or more after the first note became due, Michalson, Hutchinson, the cashier of the bank and another officer of the bank drove in Michalson's car to Edgerton, Minnesota, where de-

fendants were constructing a bridge. Both parties agree that Michalson took no part in the conversation at this interview, and that it was mainly between Hutchinson and young A. J. Folstad, and also that Hutchinson and young Folstad got into an altercation concerning a matter foreign to this transaction, in the course of which Folstad assaulted Hutchinson for impugning his veracity. The Folstads claim that in the course of this rather stormy interview Hutchinson, referring to the notes in controversy, stated that the bank had them, but that they were his notes and would be collected, and further claim that Michalson was lying on the grass 10 or 12 feet away at the time and said nothing. Plaintiffs claim that Hutchinson made no such statement, but for present purposes we must assume that he did.

Defendants argue that Michalson's failure to deny this statement of Hutchinson furnished a sufficient basis for the jury to find that plaintiffs were not good faith purchasers or bona fide owners of the notes. We are not of that opinion. This talk occurred some 10 months after plaintiffs acquired the notes. That the notes were duly indorsed and delivered to them long before maturity; that they gave full value for them; that they took them without notice or knowledge of any claim of a defense to them; that they promptly deposited them in the bank as collateral security; that the bank ever since has held them as such security and had exclusive possession of them; and that the bank delivered them to the attorney who brought suit with the request that suits be brought in the name of plaintiffs, is nowhere denied or disputed. In view of these facts and of the fact that Michalson took no part in the stormy interview with the Folstads, we think that his mere failure to deny a statement made by Hutchinson in the course of his angry talk with young Folstad will not justify an inference that plaintiffs were not bona fide holders of the notes, and we find nothing else in the record upon which such an inference can be based.

We find in the record sufficient evidence to make a question for the jury as to whether Hutchinson had fraudulently misrepresented the character and condition of the Texas land and this cast upon the plaintiffs the burden of showing that they took the notes in good

faith, for value, before due, and without notice of any infirmity in them or defect in the title of Hutchinson. Uniform Negotiable Instruments Act, § 52 (G. S. 1913, § 5864). To charge them with notice of infirmity in the notes or defect in the title of Hutchinson, they must have had actual knowledge of the infirmity or defect, or knowledge of such facts that their action in taking them amounted to bad faith. Un. Neg. Inst. Act, § 56 (G. S. 1913, § 5868). Whether a holder has established that he is a holder in due course is usually a question for the jury, but where all the facts are shown and are undisputed, and the transaction discloses nothing which would justify an inference of bad faith, there is no question for a jury and it is the duty of the court to direct a verdict or order judgment. Rosemond v. Graham, 54 Minn. 323, 330, 56 N. W. 38, 40 Am. St. 336; Haugan v. Sunwall, 60 Minn. 367, 62 N. W. 398; Mouat v. Wells, 76 Minn. 438, 79 N. W. 499; Pennington Co. Bank v. First State Bank, 110 Minn. 263, 125 N. W. 119, 26 L. R. A. (N. S.) 849, 136 Am. St. 496; First Nat. Bank of St. Paul v. Webster, 130 Minn. 277, 153 N. W. 736; Bank of Montreal v. Beecher, 133 Minn. 81, 157 N. W. 1070.

While it is stated in general terms that the weight and credit to be given to the testimony of witnesses is for the jury to determine, yet clear, positive and undisputed testimony, not improbable or contradictory, given by unimpeached witnesses, cannot be rejected or disregarded by either court or jury, unless the evidence discloses facts and circumstances which furnish a reasonable ground for doing so. It cannot be rejected arbitrarily, but only where doubt is cast upon its truthfulness by contradictory or discrediting facts and circumstances. Second Nat. Bank of Winona v. Donald, 56 Minn. 491, 58 N. W. 269; Grover v. Bach, 82 Minn. 299, 84 N. W. 909; Campbell v. Canadian N. Ry. Co. 124 Minn. 245, 144 N. W. 772.

The notes provide for a reasonable attorney's fee if placed, after maturity, in the hands of an attorney for collection, or collected through probate proceedings. The former rule in this state that such a provision rendered the note non-negotiable was abrogated by section 2 of the Negotiable Instruments Act (G. S. 1913, § 5814); First National Bank v. Carey, 153 Minn. 246, 190 N. W. 182.

The notes provide for an increase in the rate of interest if not paid at maturity. Such a provision does not render the note non-negotiable. Ann. Cas. 1922D, note at page 6. But our statute provides that such a provision shall work a forfeiture of all interest. G. S. 1913, § 5805. Plaintiffs seek to avoid this provision by urging that the contract is governed by the laws of Texas. The notes, evidently printed forms, were dated at San Benito, Texas. The contract for the purchase of the land was made at the residence of defendants in the state of Minnesota and the notes were made and delivered in Minnesota. They did not specify the place of payment. They were Minnesota contracts. 1 Dunnell, Minn. Dig. § 1532; 8 C. J. 87. Plaintiffs knew that defendants were residents of Minnesota and that the land company was a resident of Missouri. Had plaintiffs known nothing concerning the location and situation of the parties, they might have been warranted in assuming that the notes were Texas contracts, but we think that, under the circumstances, the mere fact that "San Benito, Texas," was printed on the date line at the top of the notes did not justify such an assumption.

Even if plaintiffs were not holders of the notes in due course, we should be unable to sustain the verdict. Defendants alleged that they had rescinded the contract for the purchase of the land for which the notes were given, but the evidence fails to show any attempt to rescind. A warranty deed of the land, bearing the same date as the notes, was executed by the land company to defendants. This deed was acknowledged May 15, 1920, and was filed for record in the proper office on January 31, 1921. Mr. A. Folstad admitted receiving this deed by mail, but was unable to fix the date on which he received it further than to say that he thought he could be positive that it was after the first suit had been begun. He retained the deed and produced it at the trial. No offer was ever made to return it, or to reconvey or relinquish the title conveyed by it. Neither was any offer ever made to rescind the contract or release the land company therefrom. No rescission having been effected or asked for, defendants were necessarily relegated to a claim for damages. But there is no evidence whatever from which the amount of damages, if any, can be determined. While there is evidence

that the land was not improved as represented, there is no evidence whatever that it was not worth the full amount which defendants agreed to pay for it. It is firmly established in this state that the measure of damages in such a case is the difference between the purchase price and the market value of the land. See cases cited in 3 Dunnell, Minn. Dig. and 1916 and 1921 Supplements, § 10100. As the failure to offer evidence as to the market value of the land might be cured on another trial, we should not direct judgment on this ground. But, as the transactions through which plaintiffs acquired the notes were gone into fully and disclosed nothing which would justify a finding of bad faith on their part, we think it becomes the duty of the court to direct judgment in their favor.

If defendants were induced to purchase the land by fraudulent misrepresentations, they have a cause of action against the land company for the damages sustained, but cannot counterclaim such damages against plaintiffs who are holders of the notes in due course. The order appealed from is reversed and judgment will be entered in favor of plaintiffs for the amount of the notes, but without interest thereon.