# HERMAN OLSEN v. JOSEPH G. HOFFMANN.[1]

August 3, 1928.

No. 26,779.

**When burden is on holder of note to prove he holds it in due course.**

1. Every holder of promissory notes is deemed prima facie to be a holder in due course; but when the title of any person who has negotiated them was defective (fraudulently procured) the burden is on the holder to prove that he or some person under whom he claims to have acquired the title is a holder in due course.

**When unimpeached testimony of credible witness should be accepted as true.**

2. It is the duty of the trier of fact to accept as true the positive, unimpeached testimony of a credible witness unless the same is inherently improbable or rendered so by the facts and circumstances disclosed upon the record. The mere fact that a witness is interested as a party to the action does not permit him to be discredited.

**What constitutes notice of fraud in inception of note.**

3. To constitute notice of fraud in the inception of a promissory note it must be made to appear that the person to whom it is negotiated must have had actual knowledge thereof or knowledge of such facts that his action in taking the paper amounted to bad faith.

**Subject to exceptions in special cases, purchaser of negotiable paper need not make inquiry as to maker.**

4. The general rule is that the purchaser of negotiable paper need not make inquiry or investigation as to the maker; but this rule has its exceptions under special circumstances.

**Memorandum after special indorsement was surplusage.**

5. Following a special indorsement on the back transferring a six per cent promissory note were the words, "To draw seven per cent from 3-5-1920." *Held*, this memorandum was surplusage without legal significance as between the indorsee and the maker; and was not of such character as to put the indorsee upon inquiry.

**Burden of proof which rests on transferee.**

6. The transferee of negotiable paper need only to sustain the burden of proof which the law imposes upon him.

[1]Reported in 221 N. W. 10.

**Sale of one's own securities does not make seller the agent of buyer.**

7. Where one person authorizes another to buy securities and sends him the money therefor and such other person does not buy securities but keeps the money and sends his own securities which are accepted and retained, it is *held* that the relation of principal and agent is not involved in the investment.

**When purchaser of commercial paper is regarded as bona fide holder.**

8. Where one purchases commercial paper in good faith, in the usual course of business, before maturity, for value and without notice of any facts affecting the validity of the paper, he is entitled to the advantages which the commercial law confers upon a bona fide holder.

Agency, 2 C. J. p. 704 n. 97.
Bills and Notes, 8 C. J. p. 464 n. 15; p. 499 n. 8; p. 504 n. 25; p. 983 n. 43; p. 1048 n. 13.
Evidence, 23 C. J. p. 48 n. 38, 41.

See note.in 29 L.R.A.(N.S.) 351; 44 L.R.A.(N.S.) 395; L. R. A. 1918F, 1149; 3 R. C. L. 1072; 1 R. C. L. Supp. 973; 4 R. C. L. Supp. 234; 6 R. C. L. Supp. 219.

Defendant appealed from an order of the district court for Brown county, Gislason, J. denying his motion for a new trial.   Affirmed.

*Albert Hauser,* for appellant.

*Davis & Berg,* for respondent.

WILSON, C. J.

Appeal from an order denying defendant's motion for a new trial.

Plaintiff sues to recover on four $500 promissory notes.   One England was a banker at Lamberton.   On March 5, 1920, he sold a 160-acre farm to defendant under a contract for deed which contained a provision that if after two years from the date thereof defendant did not want the land England would take it back and pay back the money which defendant had paid.   England took, with the contract that he got from defendant, notes including the ones here involved for deferred payments.   Two years later defendant exercised his privilege under the contract and surrendered the land to England, who told him he had used the notes as col-

lateral but that he would get them and return them. This was never done.

Plaintiff is a farmer and lives in Wisconsin. He and England were raised in the same community and were friends. England visited Wisconsin from time to time. He told plaintiff that if he had any money to invest to send it to him to be invested in safe and good securities. On March 16, 1920, plaintiff, trusting England to do as he agreed, sent England $2,000 for such purpose, and England sent plaintiff four of the notes so given with said contract. England indorsed and guaranteed the notes. He paid one year's interest on the notes.

Plaintiff knew nothing about defendant, made no inquiry concerning him, and did not write to him until the fall of 1926 when he for the first time learned the facts.

Defendant's offer of proof to establish his claim that England procured the notes through fraud was excluded. For the purpose of this case we will assume that the notes were so procured.

The trial court directed a verdict for plaintiff.

1. Every holder of promissory notes is deemed prima facie to be a holder in due course; but when notes are procured by fraud the burden is on the holder to prove that he or some person under whom he claims to have acquired the title is a holder in due course. G. S. 1923, § 7102; Goedhard v. Folstad, 156 Minn. 453, 195 N. W. 281; McWethy v. Norby, 143 Minn. 386, 173 N. W. 803.

2. Defendant contends that it was for the jury and not the court to determine upon the record before us whether plaintiff has sustained this burden of proof.

Plaintiff's case rests alone upon his own testimony and his exhibits. He bought these notes without any regard to the maker's integrity or financial condition. He made no investigation concerning the maker. His confidence and trust were in England, who guaranteed the notes. He naturally is an interested witness in the case. He and England were friends.

From this state of facts and circumstances it is urged that the court was required to submit to the jury the question as to whether plaintiff had sustained the burden of proof, particularly involving

the elements of interest of the plaintiff as a witness, good faith, value, and want of notice of the fraud. It is true that ordinarily the credibility of interested witnesses and generally the interest or want of interest of a witness are for the consideration of the trier of fact. But these general rules are subject to another well established rule, namely, that clear, positive, direct and undisputed testimony, not improbable or contradictory, given by an unimpeached witness, cannot be rejected or disregarded by either court or jury, unless the evidence discloses facts and circumstances which furnish a reasonable ground for so doing. Such testimony can be rejected only when doubt is cast upon its truthfulness by contradictory or discrediting facts and circumstances. The testimony of a witness may be disregarded if it contains inherent improbabilities or contradictions which, alone or in connection with the other circumstances in evidence, furnish a reasonable ground for concluding that the testimony is not true. Goedhard v. Folstad, 156 Minn. 453, 195 N. W. 281; Babich v. Oliver I. Min. Co. 157 Minn. 122, 195 N. W. 784, 202 N. W. 904; Benson v. County of Marshall, 163 Minn. 309, 204 N. W. 40; Campbell v. C. N. Ry. Co. 124 Minn. 245, 144 N. W. 772; Hawkins v. Sauby, 48 Minn. 69, 50 N. W. 1015; Campbell v. Nelson, 175 Minn. 51, 220 N. W. 401; Lampi v. James H. Brown Co. 165 Minn. 169, 205 N. W. 953; Miller v. Aetna Ins. Co. 168 Minn. 145, 209 N. W. 887; Muetzel v. Muetzel, 169 Minn. 360, 211 N. W. 320. See also First Nat. Bank v. Klimenhagen, 159 Minn. 469, 199 N. W. 91.

It is argued that the jury might have found a verdict for the defendant; that the jury may have concluded that plaintiff, being a friend of England, was merely a means of collecting and that because thereof he made no investigation. If so, such verdict would be based upon speculation and conjecture and rest wholly in the minds of the jurors and would not be supported by the record. The law will not permit a credible witness to be discredited by the trier of fact merely because such witness is a party to the action. None of the cases go so far as to hold that the interest of a witness in the outcome of the action, standing alone and without any inherent

weakness or other facts and circumstances shown tending to weaken, contradict or impeach his testimony, is sufficient to permit the jury to reject it.

3. To constitute notice of the fraud involved it must be made to appear that the person to whom the paper is negotiated must have had actual knowledge thereof or knowledge of such facts that his action in taking the paper must have amounted to bad faith. G. S. 1923, § 7099; Allen v. Cooling, 161 Minn. 10, 200 N. W. 849.

4. Some cases involve facts and circumstances which lead to the conclusion that failure to make inquiry or investigation as to the maker will be an important factor in carrying the case to the jury. Sorenson v. Greysolon Co. 174 Minn. 258, 219 N. W. 95; McPherrin v. Tittle, 36 Okl. 510, 129 P. 721, 44 L.R.A.(N.S.) 395, note, p. 404. But in such cases as this the failure to make such inquiry or investigation is of little importance. Plaintiff depended upon England to send him only good securities, and he also had received England's guaranty. This is substantially the way in which many investors buy securities even in the absence of such guaranty. We cannot adopt the rule that the purchaser of commercial paper must in all cases make investigation as to the maker. The law is that he must investigate only under exceptional circumstances. Nor is there anything in the transaction in this case to indicate that plaintiff avoided investigation lest it would disclose a defense. Here was an ordinary man having a very ordinary transaction with one in whom he had confidence. Every act of plaintiff is indicative of honesty of intention, and the record does not disclose any suspicious circumstance demanding hesitation or inquiry. When there are facts or circumstances which constitute "red lights" ahead, the purchaser must then not proceed blindly but must make inquiry to ascertain the truth. State Bank of Rogers v. Missia, 144 Minn. 410, 175 N. W. 614; State Bank of Morton v. Adams, 142 Minn. 63, 170 N. W. 925; Drew v. Wheelihan, 75 Minn. 68, 77 N. W. 558; Cole v. Johnson, 127 Minn. 291, 149 N. W. 467; King Cattle Co. v. Joseph, 158 Minn. 481, 198 N. W. 798, 199 N. W. 437. In the presence of such circumstances a jury question is usually presented.

5. The indorsement on the notes was made with pen and ink in this form: "Pay to the order of Herman Olsen, payment guaranteed. H. M. England." Below the indorsement was a pencil writing in these words: "To draw seven per cent from 3-5-1920." The notes drew six per cent. The indorsement in ink is a complete, special indorsement. G. S. 1923, § 7077. The pencil memorandum is no part of it and in no way impeaches the indorsement or guaranty. It neither restricts nor qualifies the indorsement, within the meaning of G. S. 1923, §§ 7079 and 7081. It is surplusage and has no legal significance as between the parties to this action; nor is it of such character as to put the indorsee upon inquiry.

6. It is also urged upon authority of Bank of Montreal v. Richter, 55 Minn. 362, 57 N. W. 61, that the existence of fraud between the original parties, putting the burden upon plaintiff as hereinbefore stated, raises a presumption which operates against the holder and that suspicion follows the note into his hands. The Richter case however is merely another way of locating the burden of proof. It does not mean that after the plaintiff has met the burden of proof he must go still further and offer additional evidence to remove the "suspicion" which necessarily fades away when the burden of proof is met. When this burden is sustained, there is no longer any presumption to operate against the holder.

7. The record is sufficient to justify the conclusion that plaintiff authorized England to select and buy securities for him as his agent. But the fact is he did not do so. He sent to plaintiff his own notes, which act was so inconsistent with the exercise of the authorized agency that we hold that the relation of principal and agent is not involved.

8. The testimony of the plaintiff is not impeached nor inherently improbable; and the inferences to be drawn from all the circumstances do not lead to different conclusions by reasonable men. Neither the friendship between plaintiff and England, nor the surplusage below the indorsement, nor the want of inquiry or investigation as to the maker, nor the interest of the plaintiff, nor all of these combined afford an opportunity for a jury to destroy the

advantages which the commercial law confers upon a bona fide holder of negotiable paper. That plaintiff acted in the ordinary course of business cannot be doubted. The record shows that he acquired the notes in ignorance of the fraud and in good faith. He paid the face of the notes and acquired them long before maturity. This was sufficient. Harwood State Bank v. Hendrum Co-op. Elev. Co. 166 Minn. 400, 208 N. W. 24. There was nothing in the transaction to incite suspicion as in First Nat. Bank of Rolette v. Andersen, 144 Minn. 288, 175 N. W. 544. A verdict for defendant could not stand. It was the duty of the court to direct a verdict as it did.

Affirmed.