JOSEPH VETSCH v. J. ADAM NEISS and Another.[1]

December 17, 1896.

Nos. 10,159—(123).

**Partnership—Authority to Borrow Money—Negotiable Instruments.**

A firm carrying on the business of boring wells, buying materials for pumps and windmills, putting these materials together, and then placing these articles into wells bored by the firm, or already bored or dug by other parties, cannot be *held*, as a matter of law, to be a trading co-partnership; each member having implied authority to borrow money for the use of the firm, and to execute and deliver negotiable paper therefor.

**Same.**

Whether one member of a partnership can bind his partners by making promissory notes in the firm name is a question of authority to execute the notes, and is not to be determined by simply ascertaining for whose benefit the notes were made.

**Same—Implied Authority of Partner.**

The authority to borrow money for the use of the firm, and to execute negotiable paper therefor, may be implied from the nature of the business, according to the usual course in which it is carried on, or as reasonably necessary or fit for its successful prosecution; or, if it cannot be found in that, it may still be inferred from the actual, though exceptional, course and conduct of the business of the partnership itself, as personally carried on, with the knowledge, actual or presumed, of the partner sought to be charged.

**Same—Province of Jury.**

In all cases where the court cannot hold, as a matter of law, that the firm is a nontrading co-partnership, and that its members are unable to bind the firm by the execution of promissory notes without the knowledge and assent of all of its members, and the question arises as to their authority, it is for the jury to say what the nature of the business in each case is, what is necessary and proper to its successful prosecution, and what is involved in the usual and ordinary course of its management by those engaged in it; and for the jury to ascertain and determine whether the transaction in question is one which those dealing with the firm had reason to believe was authorized by all of its members.

Appeal by defendant Nicholas Georges from an order of the district court for Wright county, Pond, J., denying a motion for a new trial. Reversed.

[1] Reported in 69 N. W. 315.

*W. H. Cutting,* for appellant.

It was a question of fact for the jury whether it was necessary to borrow this money. Irvine v. Myers, 4 Minn. 164 (229); Heenan v. Nash, 8 Minn. 365 (407).

*James C. Tarbox,* for respondent.

COLLINS, J. Action upon a promissory note alleged to have been made by defendants, as co-partners. The plaintiff was an indorsee after maturity. The answering defendant admitted the existence of a partnership for a specified purpose between the defendants, and then alleged that the note was executed and delivered by his co-partner, without his knowledge or consent, and that the sole and only consideration therefor was a private debt due from such partner to the payee named in the note. These were the issues upon which the parties went to trial; and, at the conclusion of the evidence, the court, upon plaintiff's motion, instructed the jury to return a verdict in his favor. Such a verdict was returned, and the appeal is from an order denying a motion for a new trial.

Several assignments of error are urged by counsel, mostly relating to the rulings of the court when receiving testimony; but we pass all of them, and come directly to that which challenges the action of the court when directing a verdict in plaintiff's favor.

The evidence showed conclusively that the co-partnership carried on the business of boring wells, buying materials for pumps and windmills, putting these materials together, and placing these articles into wells bored by the firm, or already bored or dug by other persons. Strictly speaking, it was not a trading partnership, although it will be seen upon an examination of the decisions that the line of demarkation between what are trading and what are nontrading partnerships is very indefinite and indistinct.

In 1 Bates, Partn. § 327, the author states that trading partnerships are frequently called commercial or mercantile partnerships, but that these terms seem to be somewhat too narrow, for oftentimes mechanical and manufacturing partnerships are included among trading partnerships, the test being founded, not on the nature of the articles they deal in, but the character of their dealings. Mr. Bates points out the difficulty in the application of any test for the purpose of determining with absolute certainty, as a ques-

tion of law, what are and what are not trading partnerships, and finally concludes that if the partnership contemplates the periodical or continuous or frequent purchasing, not as incidental to an occupation, but for the purpose of selling again the thing purchased, either in its original or manufactured state, it is a trading partnership; otherwise, it is not. This, as a general statement, is undoubtedly correct, but the difficulty lies in its application, as will be seen by an examination of the cases cited in the volume referred to (sections 328 and 329, the last treating particularly of nontrading firms), all of the cases cited being partnerships in occupation; and in some of these cases the difference between trading and nontrading partnerships seems to be ignored, the single test of scope of business being adopted.

While, on the authorities, it may not be very difficult, in many cases, to hold, as a matter of law, that the scope of the business carried on by a certain firm renders it a trading partnership, with a power or authority resting in each partner to borrow money for the use of the firm, and to execute and deliver negotiable paper therefor, or to hold, as a matter of law, that the firm business constitutes it nothing but a nontrading partnership, in which the partners have, prima facie, no authority to borrow money, or to bind the concern by a promissory note, there are many partnerships concerning which no rule of law as to the implied powers of the partners with respect to firm notes can be applied with safety. In these cases the authority of either partner in this respect must be determined as a question of fact, depending upon circumstances peculiar to each. Certain it is, from the nature of the business conducted by defendant firm, that the court below could not hold, as a matter of law, that it was a trading partnership, and hence that each partner had implied authority to borrow money for its use, and to execute and deliver a firm note for the same.

The evidence conclusively showed that the note in suit was given for money borrowed to pay a firm debt, incurred for labor performed for the firm, and in its legitimate business, and that the money so obtained was used by the partner who made the note in payment of this indebtedness. But, when the partnership is strictly nontrading, it can make no difference that the money was actually used for its benefit. 1 Bates, Partn. § 343, and citations. The question is

one of authority to execute the note, not as to what became of the proceeds, or for whose benefit they were used.     But in cases where the court cannot say, as a matter of law, that the firm is either a trading or a nontrading partnership, and that each member has or has not the power to bind the firm by the issuance of negotiable paper, the test seems to be whether the issuing of such paper is essential to carry into effect the ordinary purpose for which the partnership was formed.     Id.    And, of course, the fact that the firm derived the benefit of the act may be taken into consideration when applying this test.

The liability of one partner upon promissory notes and other contracts made by a co-partner, without his actual knowledge or assent, is a question of agency; and the law applicable to the case now before us is concisely stated in Irwin v. Williar, 110 U. S. 499, 4 Sup. Ct. 160, thus:

"If the contract of partnership is silent, or the party with whom the dealing has taken place has no notice of its limitations, the authority for each transaction may be implied from the nature of the business, according to the usual and ordinary course in which it is carried on by those engaged in it, in the locality which is its seat, or as reasonably necessary or fit for its successful prosecution.    If it cannot be found in that, it may still be inferred from the actual, though exceptional, course and conduct of the business of the partnership itself, as personally carried on, with the knowledge, actual or presumed, of the partner sought to be charged."

And the learned justice who wrote the opinion proceeds to say:

"What the nature of that business in each case is, what is necessary and proper to its successful prosecution, what is involved in the usual and ordinary course of its management by those engaged in it, at the place and time where it is carried on, are all questions of fact, to be decided by the jury, from a consideration of all the circumstances which, singly or in combination, affect its character, or determine its peculiarities; and from them all, giving to each its due weight, it is its province to ascertain and say whether the transaction in question is one which those dealing with the firm had reason to believe was authorized by all of its members."

See, also, Dowling v. Exchange Bank, 145 U. S. 512, 12 Sup. Ct. 928.

The court erred in holding, as a matter of law, that, upon any view of the facts, the jury could not find for the defendant who answered. We have not alluded to the testimony introduced by plaintiff which

tended to show that the defendant just referred to knew that his partner was to borrow the money from the payee of the note, and to make the note in suit, for such knowledge was denied. It is hardly necessary to say that if the jury found that he was advised that the money was to be borrowed, and the note given, and assented to it, either actually or by implication, a verdict in plaintiff's favor could be sustained on this fact alone.

Order reversed, and new trial granted.