# FIRST NATIONAL BANK OF ST. PAUL v. CLARA B. WEBSTER and Others.[1]

July 9, 1915.

Nos. 19,286—(197).

**Partnership — liability on promissory note.**

1. A trading copartnership is liable upon a promissory note made in its name by one of its members, though such member made it without actual authority and appropriated the proceeds of it to his own use, the payee being without notice and acting in good faith.

**Same — evidence.**

2. Under the evidence it is *held*, as a matter of law, that defendants' testate and one Whipple, who were engaged as copartners in buying and selling lumber, were a trading copartnership.

**Notice to bank making loan.**

3. Under the evidence it is *held*, as a matter of law, that the plaintiff bank in making a loan to a trading copartnership and taking its note acted without notice or knowledge and in good faith, though the copartner purporting to act for the copartnership appropriated the proceeds to his own use.

Action in the district court for Hennepin county to recover $10,000. The separate answer of defendant Webster denied that he and the other defendant were partners or ever executed either of the notes described in the complaint, and alleged that if any notes were ever issued, purporting to be made by a copartnership composed of defendants, the same were made without his knowledge or permission and were fictitious so far as he or any copartnership were concerned. The case was tried before Booth, J., who denied plaintiff's motion for a directed verdict, and a jury which returned a

[1] Reported in 153 N. W. 736.

Note.—For cases passing upon circumstances sufficient to put one taking partnership paper on inquiry, see notes in 29 L.R.A.(N.S.) 356 and 44 L.R.A. (N.S.) 404.

verdict in favor of defendant. Plaintiff's motion for judgment in its favor for $7,000 notwithstanding the verdict, or for a new trial was denied. Steele, J. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed.

*Lightner & Young,* for appellant.

*A. R. Chesnut* and *James E. O'Brien,* for respondents.

DIBELL, C.

Action to recover upon an indebtedness evidenced by a promissory note. There was a verdict for the defendant Webster. The plaintiff appeals. Webster died after verdict. His representatives have been substituted. The defendant Whipple did not answer. He has died since the trial.

On December 8, 1908, and for many years prior thereto, and until in January, 1910, when they incorporated, Henry Webster, the defendants' testate, and the defendant V. A. Whipple were copartners as Webster & Whipple at Minneapolis, Minnesota. The indebtedness which it is sought to recover originated on November 1, 1909, when a note in the name of Webster & Whipple, indorsed by Lucas Kells of Sauk Center and the defendant Whipple individually, was given to the plaintiff bank upon a loan then purporting to be made to Webster & Whipple. The proceeds of the note were used by Whipple for his personal use and the copartnership took no benefit.

The business relations of Webster & Whipple and the plaintiff bank commenced on December 8, 1908. On that day it was arranged between the copartnership and Kells that the latter should assist them in negotiating a loan of $10,000. He was to get a commission. Kells and Whipple went to the plaintiff bank for that purpose. They borrowed from the bank $15,000, evidenced by three notes of $5,000, each signed in the name of Webster & Whipple, by Whipple, and indorsed individually by Whipple and Kells. Two of these notes were used by Webster & Whipple, and Whipple made use of the other. Webster did not authorize the use of the firm name except for firm purposes. This was the finding of the jury. It was the plaintiff's claim, and it offered evidence in support of it, that Webster authorized it all.

The transactions recited are of importance only as they explain the one under consideration. All of the loans mentioned were paid.

The $7,000 loan was made in the same way as the first loan, the copartnership signing the note by Whipple, and Whipple and Kells indorsing it individually. Whipple used the money.

The court instructed the jury that if the copartnership of Webster & Whipple was a trading copartnership, and if the bank loaned the $7,000 in good faith without notice or knowledge of an unauthorized purpose on the part of Whipple, then it could recover of the copartnership though Whipple made a wrongful use of the money. The case was tried and put to the jury upon this theory. The verdict was general for the defendant. How either issue was determined by the jury is not known. There are three considerations which should have attention:

(1) What the liability of a trading copartnership is upon a negotiable instrument issued in the copartnership name by one of the firm, to secure a loan, the payee acting without notice and in good faith, and the copartner securing the loan appropriating the proceeds to his own use.

(2) Whether Webster & Whipple was a trading copartnership.

(3) Whether the evidence sustains a finding that the bank had notice or knowledge of a purpose on the part of Whipple to appropriate the $7,000 to himself.

1. The law is well enough settled that one member of a trading copartnership has implied authority to borrow money on the credit of the copartnership; and if he so borrows from one loaning without notice and in good faith, and appropriates the proceeds to his own use, the copartnership is liable upon the obligation. Stevens v. McLachlan, 120 Mich. 285, 79 N. W. 627; Sylverstein v. Atkinson, 45 Miss. 81; Winship v. Bank of the U. S. 5 Pet. 529, 8 L. ed. 216; First Nat. Bank of Browerville v. Stadden, 103 Minn. 403, 115 N. W. 198; Vetsch v. Neiss, 66 Minn. 459, 69 N. W. 315; 1 Bates, Partnership, §§ 327–329; 1 Daniel, Neg. Inst. § 357; Gilmore, Partnership, 286.

(2) Webster & Whipple were engaged in the lumber business. They had an office in the Lumber Exchange in Minneapolis. They

had two yards in Minneapolis and were interested in country yards. They carried a stock of lumber. They had a capital of $130,000. They bought on credit and sold on credit. They had accounts receivable and notes receivable and accounts and notes payable. They borrowed from various banks. In their statement made to the plaintiff bank at the time of the giving of the notes in December, 1908, they showed sales of $154,000 for the previous year and purchases of $109,000, and a net profit of something like $36,000. All of their business was directly that of buying and selling lumber or business immediately connected with it. It was a clean cut buying and selling business. As we view it they were as a matter of law a trading copartnership. 1 Daniel, Neg. Inst. §§ 357–358a; 1 Bates, Partnership, §§ 327–329; Burdick, Partnership, pp. 192–200; Gilmore, Partnership, p. 107; 8 Words & Phrases, 7054; 4 Words & Phrases (2d series) 963.

3. We can see no evidence sustaining a finding that the bank had any knowledge or was put on notice when it loaned the $7,000 on November 1, 1909, that Whipple intended a misappropriation of it. The loan was made as the first loan in December, 1908, was made. As far as we are advised by the record the transaction, so far as it concerns the bank, was an entirely honest one. Regardless of what Whipple and Kells were doing, and the use being made of the firm's credit, the $7,000 note was a valid obligation of the partnership. Webster ought not to insist that the plaintiff bank had notice or knowledge that Whipple was doing something wrong as early as November, 1909, when he only learned of it about that time himself, and apparently did not make a disclosure then. It appears that Whipple had been engaged in the mining business, and had lost, and had become indebted, and all this was a reason for the copartnership incorporating in January, 1910. Whipple was continued as an officer of the corporation at a good salary; and when he ceased to be an officer he was an employee at a good salary. He was held out as worthy of trust. As a matter of law it should be held that in 1909, when the debt in suit arose, the bank was without notice and acted in good faith.

It may be remarked with propriety that the judge who tried the

case was required, as the law then stood (Laws 1913, p. 336, c. 245.), to submit the case to the jury and he retired from the bench without opportunity for review; and the judge who signed the order from which the appeal is taken was without the usual opportunity for review.

We are inclined to grant a new trial rather than judgment.

Order reversed.