# MIDLAND NATIONAL BANK OF MINNEAPOLIS v. FARMERS CO-OPERATIVE ELEVATOR COMPANY.[1]

December 14, 1923.

No. 23,606.

**Collateral note to running account enforceable.**

1. Where a straight promissory note is executed and delivered by the maker to the payee as collateral to an, open running account upon which there is a balance owing from the maker to the payee, the note becomes an enforceable obligation.

**When payee acquires an interest which he may assign.**

2. Where a promissory note for $4,000 payable upon demand, is given in the manner stated, and the amount thereof is credited to the open account by the payee, the payee acquires an interest in the note which he may assign.

**Title of innocent purchaser of such collateral note not defective, when.**

3. Where a promissory note is given as collateral to an open account under an alleged oral agreement not to negotiate the same, and where the payee thereafter negotiates the same to an innocent purchaser, the transaction does not render the title to the note defective, within the meaning of the statute.

**No inference of breach of faith warranted.**

4. The record fails to disclose or warrant an inference that the note in suit was negotiated by the payee in breach of faith or under circumstances amounting to a fraud.

**Parol evidence of agreement not to negotiate note inadmissible.**

5. Where a negotiable promissory note is executed and delivered to the payee, for value, under an alleged oral agreement that it should not be negotiated, parol evidence is inadmissible to show such oral agreement, as against an innocent holder.

**Evidence conclusive in favor of plaintiff.**

6. The record shows conclusively that the plaintiff received the note for value, before maturity and in the usual course of business.

[1]Reported in 196 N. W. 275.

**Purchase from regular customer not evidence of bad faith.**

7.   The mere fact that the payee was a regular patron of the bank is, of itself, no evidence of bad faith on the part of the plaintiff in acquiring the instrument.

Action in the district court for Traverse county to recover $4,000 and interest upon a promissory note. The defendant interposed a counterclaim for $9,514.51. The case was tried before Flaherty, J., who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the testimony denied plaintiff's motion for a directed verdict, and a jury which returned a verdict in favor of plaintiff for $485.49. From an order denying its motion for judgment notwithstanding the verdict for the sum claimed in the complaint or for a new trial, plaintiff appealed. Reversed.

*Ueland & Ueland* and *O'Brien, Horn & Stringer,* for appellant.
*Murphy & Anderson* and *Houston & McDonald,* for respondent.

QUINN, J.

Action to recover upon a promissory note executed by the defendant to the E. L. Welch Company on September 23, 1921, for $4,000 and by it indorsed to the plaintiff. There was a verdict in favor of the defendant. The appeal is from an order denying plaintiff's motion for judgment or a new trial.

The plaintiff is a national banking association with its principal place of business in the city of Minneapolis. C. B. Mills is its president and E. L. Matson its vice president. The defendant is a Minnesota corporation engaged in the buying, shipping and selling of wheat and other grains. Its principal place of business is at Wheaton, some 200 miles west of Minneapolis, and Sam Winge is its general manager. The E. L. Welch Company was a commission firm engaged in the handling and sale of wheat and other grains upon commission, at Minneapolis. E. L. Welch was its president and Ted Welch its secretary.

For a number of years the defendant had shipped the larger portion of its grain to the Welch Company. It had an open running account with that company. On August 13, 1921, Ted Welch called upon the defendant at its place of business at Wheaton, in the way

of soliciting a continuation of its business for the ensuing year. The matter of finance was talked over and the defendant was given to understand that it might make drafts upon the commission company to the extent of about $3,000 and, if it exceeded that amount, they might have to call for collateral notes as it had done in previous years. With this arrangement, the defendant continued to ship to that company.

On September 23, 1921, there was a balance of $5,974.85 against the defendant on the open account with the Welch Company. Accordingly that company prepared the note in question and two others, aggregating $10,000, and forwarded them by mail to the defendant for execution. These notes were made payable upon demand with interest. On September 28, the company received these notes back all signed. Defendant was then credited on its open account with the amount of the face of these notes.

The Welch Company had a line of credit with the plaintiff bank, secured by collateral notes. Being in need of more money, E. L. Welch went to the bank on October 1, 1921, and asked for a further loan of $10,000. The bank agreed to let him have the money on the company note, if it would furnish additional collateral. The loan was then completed, the Welch Company turning over to the bank the $4,000 note in suit together with other notes as further collateral to the indebtedness. The Welch Company was then credited on its deposit account with the amount of the loan which was afterwards checked out. Mills and Matson, who had the entire handling of the matter for the bank, testified that they had no notice nor knowledge that could in any way affect the negotiability of the note in suit.

It is contended on behalf of the defendant that there was no consideration for the giving of such note; that it was executed and delivered to the payee upon the express agreement that it was to be used only as collateral to an open grain account; that the payee was to retain the note and not to negotiate it; that, by indorsing the same to the plaintiff bank, the payee committed a breach of faith and violated the agreement upon which the note was given; and that the plaintiff is not a holder in good faith, and without notice of the

defect in the title thereto. The defect in the title and ownership of the note, as contended for by defendant, is that the instrument was given as a collateral to the open account, without the right, under the agreement, to negotiate it for any purpose.

The defendant bases its defense squarely upon the alleged defective title of the payee to the note. The note, in form, is a straight negotiable promissory note for $4,000, payable upon demand. When the plaintiff rested, it had made out a case of being a holder of the note, in due course and for value, under the provisions of G. S. 1913, sections 5836, 5867 and 5871.

We come then directly to the issue. Is there legal competent evidence in the record tending to show defective title to the note in the Welch company, within the meaning of the statute? By section 5867 defective title is defined as follows: "The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

By reference to the answer, it will be observed that it is not therein alleged that the note was obtained by the payee, either by fraud, duress, force, fear or any other unlawful means, or for an illegal consideration. The question then arises whether the note was negotiated by the payee in breach of faith or under circumstances amounting to a fraud.

When considered together, we think it perfectly clear from the defendant's answer and the testimony of its president and its manager, that the note in suit was executed and delivered to the payee named therein, pursuant to a previous arrangement for money advanced and to be advanced on drafts drawn by the defendant. When the note was given, the defendant was owing the payee nearly $6,000 on an open account. The amount of the note was credited to such account. Under these circumstances, the note became a complete enforceable obligation against the defendant.

At the time of the trial the defendant was owing the Welch company upon account. Had the note been indorsed across its face at the

time of its execution, that it was given as collateral to the maker's open account, still it would have been an enforceable instrument to the amount of the balance owing on the account, as between the parties thereto.

Upon the trial testimony was received, under objection, tending to show by parol an agreement between the maker and the payee, that the note, though payable to the order of the payee, was not to be negotiated. The evidence was clearly inadmissible for such purpose. We are unable to conceive of any way in which to more flatly contradict the terms and legal effect of a written instrument by parol. This rule is so well established that it should require no citation of authorities. First Nat. Bank v. National Marine Bank, 20 Minn. 49 (63); Esch v. Hardy, 22 Minn. 65; Knoblaugh v. Fogelsong, 38 Minn. 352, 37 N. W. 586; Farwell v. St. Paul Trust Co. 45 Minn. 495, 48 N. W. 326, 22 Am. St. 742; Youngberg v. Nelson, 51 Minn. 172, 53 N. W. 629, 38 Am. St. 497; Lake Harriet State Bank v. Miller, 138 Minn. 481, 164 N. W. 989; Martin v. Cole, 104 U. S. 30, 26 L. ed. 647; Davis v. Randall, 115 Mass. 547, 15 Am. Rep. 146.

The note was received by the payee on September 28, 1921, for an actual consideration. At that time the payee had advanced to the maker of the note money far in excess of the face of the note. Can it be said with any sort of good reason that the note was not enforceable by the payee against the maker at this time? Clearly not. On October 1 the Welch company had rights under the note which, by its terms, it could transfer. The exercise of that right constituted no fraud nor breach of faith. The language of section 5867 of the statute regarding negotiations is: "In breach of faith or under such circumstances as amount to a fraud." Can it be said that the note was, under the circumstances, negotiated in breach of faith or under circumstances amounting to a fraud, so as to rebut the presumption of its acquisition by the indorsee in due course? We are of the opinion and hold that it cannot. The statute has reference to the time when the instrument is actually negotiated. If the payee had, at that time, the right to negotiate, there is no breach of faith or fraud, however prejudicial the transfer may prove to be.

The note was for an adequate consideration and there was an actual delivery. The distinction between negotiating a note where there has been a real delivery and one to which there is a want of such delivery, goes directly to the question of the payee's title to the instrument. Where the agreement fails to affect the payee's title, it is ineffectual insofar as a transfer to an innocent party is concerned. Snelling State Bank of St. Paul v. Clasen, 132 Minn. 404, 157 N. W. 643, 6 A. L. R. 1663; Farmers State Bank of Cologne v. Skellett, 149 Minn. 266, 183 N. W. 831; First Nat. Bank of Mankato v. Carey, 153 Minn. 246, 190 N. W. 182. The promise not to transfer did not render the title defective nor furnish a defense to the note. .

Section 5867 defines what evidence is required to show good faith. The showing is conclusive that the bank received the note before its maturity. Also that it was taken for value. Sections 5865 and 6005; Rosemond v. Graham, 54 Minn. 323, 56 N. W. 38, 40 Am. St. 336; Haugan v. Sunwall, 60 Minn. 367, 62 N. W. 398; German American State Bank of Ritzville v. Lyons, 127 Minn. 390, 149 N. W. 658. .We have then the query whether plaintiff was a holder in good faith. We answer the question in the affirmative. The matter resolves itself to this: Does the record show that the bank had notice that the Welch company had no right to negotiate the note? If such were a fact section 5868 gives us the rule for determining what constitutes notice of an infirmity in an instrument of this character, or of a defect of title in the payee. It provides that the person to whom the instrument is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts so that his act in taking the note amounted to bad faith. This rule goes to the very vitals of the negotiable instrument statute.

. The fact that the payee did its banking, to a large extent, with the plaintiff, is not sufficient to show bad faith. It appears that the money market was tight and the payee asked the bank for a further loan; the bank consented, provided sufficient collateral was furnished, all of which was of usual and frequent occurrence. The note in suit, together with others, was then indorsed and turned over to the bank. The fact that the indorser was a regular customer of

the bank, of itself rendered the transaction more usual, not more unusual, insofar as bad faith is concerned. Nor is the additional fact that the payee and the indorsee were members of the same chamber of commerce, proof of itself that the indorsee had any notice of the alleged verbal agreement not to negotiate the instrument made at the time of its execution or before. At the time of procuring the additional loan of $10,000 from the plaintiff, there was an existing prior agreement between the commission house and the bank to the effect that the payment of the note given for the loan, would not release any collateral note, unless there was an express agreement to that effect. This agreement was placed in evidence as Exhibit "J." It provides that collateral for any loan should be held as collateral for all indebtedness between the parties. This agreement was a subsisting obligation sufficient to continue the note in question as collateral to the subsisting indebtedness from the commission house to the bank, after the payment of the additional $10,000 note. The plaintiff is entitled to judgment as asked for in the complaint. It is so ordered.

Reversed.

Justice Stone, having been of counsel, took no part in this case.