## A. J. VEIGEL v. O. T. JOHNSON.[1]

May 22, 1925.

No. 24,468.

**Defendant failed to prove that note in suit was without consideration and not his actual obligation.**

The defenses in an action on a promissory note were want of consideration and that the note was obtained by the payee's false and fraudulent representation that he would hold it as collateral to an open account between the parties and would not negotiate or use it in any other manner. The evidence showed that the payee promised to advance money to enable the maker to buy grain; that the note was given as security therefor; that money was advanced accordingly and that the note was negotiated to the bank whose representative brought the action. *Held:*

(1) That, if there was a promise to make advances, such promise was a sufficient consideration for the note.

(2) That, if the note was supported by a consideration and was an actual obligation of the maker, the negotiation of it by the payee would not be in breach of faith or under circumstances which amounted to a fraud within the meaning of section 55 of the Negotiable Instruments Act (section 7098, G. S. 1923).

(3) That the defendant failed to sustain the burden of proving that the note was without consideration and was not an actual obligation of the maker.

1. See Bills and Notes, 8 C. J. p. 230, § 366 (1926 Anno).
2. See Bills and Notes, 8 C. J. p. 786, § 1046.
3. See Bills and Notes, 8 C. J. p. 979, § 1287; p. 995, § 1299.

[1]Reported in 204 N. W. 36.

Action in the district court for Ramsey county upon a promissory note. The case was tried before Nelson, J., and a jury which returned a verdict in favor of defendant. Plaintiff appealed from an order denying his motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*Charles S. Kidder*, for appellant.

*Murphy & Johanson* and *Evans & Evans*, for respondent.

LEES, C.

Action on defendant's promissory note, indorsed by the payee to the Security State Bank of Shakopee, now insolvent and in charge of the state superintendent of banks, by whom the action was brought. The jury returned a verdict for defendant and plaintiff has appealed from an order denying his alternative motion for judgment 'or a new trial.

On August 11, 1921, at the request of Ted Welch, secretary of the E. L. Welch Company, defendant executed two notes to the company, each for $5,000. This action was brought on one of them.

Defendant owned and operated a grain elevator at Ihlen in Pipestone county, and the company was a Minneapolis commission firm dealing in grain. Defendant had bought and shipped grain to the company for sale on account during the years subsequent to 1918.

He executed the notes in consideration of the company's agreement that, during the season for buying grain in 1921-1922, he should have a line of credit of $10,000, and should consign the grain he took in at his elevator to the company for sale on commission. The arrangement seems to have been a renewal of one under which the parties had theretofore dealt with one another. The company then held defendant's notes for $10,000, and after the new notes were executed, the old ones were returned to him and his account charged therewith and credited with the amount of the new notes.

The answer alleges that prior to August, 1921, it had been the practice of the company to advance money to defendant for the purchase of grain, to charge him with the amounts advanced and credit him with the net proceeds of the grain and to enter the debit and credit items in an open account. The answer then contains the fol-

lowing allegation as to the conditions under which the note was executed:

"The said E. L. Welch Company stated to this defendant that they wished him to execute and deliver to it the promissory note referred to in plaintiff's complaint, with another note, as collateral to the said open account between the parties, and that it would keep and retain said notes in the files in its office in the city of Minneapolis, and not in any manner. use or negotiate the same, and that it desired to have said notes in its files in order to exhibit the same to banks with which it transacted business to show to said banks that it had said notes as collateral to said account."

It alleges that these representations were false and made with intent to deceive defendant, who relied upon them, and that when the notes were given defendant was not indebted to the company and that the Shakopee bank had notice of all these facts when it purchased the note in quetsion.

At the time of the transactions mentioned, E. L. Welch was president of the company bearing his name and was also president of the Shakopee bank. Before the maturity of the note he placed the company's indorsement on it, sent it to the bank, and directed the cashier to issue a draft payable to the company for the amount of the note, and this was done.

In instructing the jury the court said in effect that plaintiff could not recover if the Welch Company had agreed not to negotiate the note, or if there was no consideration for the note and the bank took it with notice of the alleged agreement or of the alleged want of consideration. An exception was duly taken and the giving of this instruction is assigned as error.

The answer expressly admitted that the company advanced money to defendant, but alleged that the amount advanced did not exceed $3,000. Attached to the answer is a statement of the alleged open account, beginning August 6, 1921, and ending March 24, 1922, when the company failed. The statement shows that in the month of August, 1921, $5,500 was advanced on five drafts drawn by defendant and that, when the fifth draft was honored, the defendant had made

five shipments of grain, for which he received credit aggregating $2,605.10. It also appears from the statement that at times the defendant overdrew his account in a substantial amount, that at other times the credit items exceeded the debit items in a substantial amount, and that when the company failed defendant had a credit balance of $1,139.88.

On cross-examination defendant admitted that in addition to the account shown by the statement he had a hedge account covering purchases of futures through the company, and a special account but when plaintiff's counsel sought to ascertain the state of these accounts when the note was given, objections were interposed and sustained, and these rulings are also assigned as error.

By the terms of the Uniform Negotiable Instruments Act, every negotiable instrument is deemed prima facie to have been issued for a valuable consideration. Value is any consideration sufficient to support a simple contract. Absence or a failure of consideration is a defense as against any person not a holder in due course, and a partial failure of consideration is a defense pro tanto. See sections 24, 25 and 28 of the act, which appear in G. S. 1923 as sections 7067, 7068, 7071.

It is an established principle of the law of contracts that a promise to do an act at a future time is a sufficient consideration for an engagement to the party making the promise, provided the promises are mutual and concurrent. Dun. Dig. § 1758; 6 R. C. L. 676.

A valid executory agreement is a sufficient consideration for commercial paper. Wyatt v. Jackson, 55 Minn. 87, 56 N. W. 578; Trademen's Nat. Bank v. Curtis, 167 N. Y. 194, 52 L. R. A. 430; Marling v. Fitzgerald, 138 Wis. 93, 120 N. W. 388, 23 L. R. A. (N. S.) 177, 131 Am. St. 1003, and, where the consideration is executory, the failure thereof is not a defense against a holder in due course, unless he had notice that the consideration failed. Flood y. Petry, 165 Cal. 309, 132 Pac. 256, 46 L. R. A. (N. S.) 861.

If the Welch Company had not honored defendant's drafts, there would have been a failure of consideration, and the company could not have enforced payment of the note. But the evidence is all to the effect that the company made the promised advances, and on

this record the trial court could not allow a verdict to stand which may have been based on a finding of want or failure of consideration. It is true that defendant claims that the note was not given for the money advanced but as collateral to the open account, but that is a matter of no particular consequence. Defendant was absolutely liable on the open account for any balance it showed in the company's favor at any time and the note secured the obligation, though it is difficult to perceive how it added anything to the ability of the company to compel payment.

It would seem much more probable that the note was given for the same purpose as the notes involved in Midland Nat. Bank v. Farmers Co-op. Elev. Co. 157 Minn. 348, 196 N. W. 275, and Kintyre Farmers' Co-op. Elev. Co. v. Midland Nat. Bank, 2 F. (2d. Ser.) 348, but that is a matter we need not consider.

The defendant contends that the evidence warranted the jury in finding that the note was given in reliance upon a promise that it should not be negotiated, and that, if it was so given and the bank took it with notice of the promise, it was not a holder in due course. McWethy v. Norby, 143 Minn. 386, 173 N. W. 803, and Wade v. Nat. Bank of Commerce, 144 Minn. 187, 174 N. W. 889, are cited to support these propositions. In addition to these cases, other decisions of this court bear directly on the present case.

In Farmers & M. S. Bank v. Graif, 150 Minn. 315, 185 N. W. 374, it was said there was no agreement on the part of the payee of the note not to negotiate it, hence its negotiation was not a fraud within the Negotiable Instruments Act, but if the indorsee knew that the payee had agreed to return the note to the maker if certain stock for which it was given did not go to par within a year, the indorsee could not recover on the note.

In Farmers State Bank v. Skellet, 149 Minn. 266, 183 N. W. 831, the note was given for a valuable consideration and the defense was that the payee had agreed to use it as collateral and for no other purpose and that, in violation of his promise, he negotiated it to the plaintiff. The court said that, if the note was supported by a consideration, the defense was not good; that, if it was an actual obligation owing to the payee, he could use it as he pleased and could

recover upon the note, if he held it, and, if he negotiated it, the indorsee could recover.

In Midland Nat. Bank v. Farmers Co-op. Elev. Co. supra, the evidence showed conclusively that the note was given for value and was delivered to the payee. It was held that the payee's promise not to transfer the note was not a defense to an action brought by a holder in due course. First Nat. Bank v. Carey, 153 Minn. 246, 190 N. W. 182, is to the same effect.

The application of the principles adopted in these cases is this: If the note in suit was supported by a consideration and was an actual obligation of the defendant, the Welch Company could use it as it pleased. Even though it promised to keep the note in the files in its office, it might nevertheless sell it or pledge it as collateral security and defendant could not be heard to say that, within the meaning of section 55 of the Negotiable Instruments Act, G. S. 1923, § 7098, the company had negotiated the note in breach of faith or under circumstances which amounted to a fraud.

Defendant had the burden of proving that the note was without consideration and was not his actual obligation to the company. As we read the record, the proof fell far short of establishing either fact, hence the court should not have permitted the verdict to stand. We have concluded not to reverse with a direction to grant plaintiff's motion for judgment notwithstanding the verdict. Additional evidence bearing on the vital issues in the case may be produced at another trial. Neither E. L. Welch nor Ted Welch, nor any other representative of the Welch Company testified at the trial. A more complete disclosure of the facts may present the case in a different light. In view of the new trial to be had, it should be said that a full inquiry into the state of all accounts between defendant and the Welch Company at and after the time of the execution of the note should be permitted, in order that as much light as possible may be shed upon the transactions between the parties which gave rise to the consideration for the note.

Order reversed and a new trial granted.

STONE, J., took no part.