**WERGER v. FREDERICK LEE CO., Inc.**

No. 13802.

United States Court of Appeals
Eighth Circuit.

July 14, 1949.

Edward Halle, New York City (Louis Sachs, Minneapolis, Minn., and Halle & Halle, New York City, on the brief), for appellant.

Stanley V. Shanedling, Minneapolis, Minn. (Irving R. Brand, Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

On September 18, 1946, appellee, Frederick Lee Company, Inc., a Minnesota corporation with its principal place of business in Minneapolis, Minnesota, accepted the following bill of exchange or trade acceptance as it is called in the record and in this opinion, payable at Northwestern National Bank, Minneapolis, and drawn by Cosmo Records, Inc., for the purchase price of phonograph records sold by Cosmo to Frederick Lee Company for immediate delivery:

"On December 17, 1946 Pay to the Order of Cosmo Records, Inc. Seventy-five Hundred and no/100 Dollars ($7500.00) The obligation of the acceptor hereof arises out of the purchase of goods from the drawer. The drawee may accept this bill payable at any bank, banker or trust company in the United States which he may designate."

The trade acceptance was not paid at maturity. Claiming to be the holder in due course, the appellant, Mrs. E. F. Werger, a resident of New York, brought this suit in the United States District Court for the District of Minnesota against the Frederick Lee Company to recover the face amount of the trade acceptance with interest and protest fees.

Although denying in its answer that the appellant was the holder in due course of the negotiable instrument sued on, within the meaning of the Uniform Negotiable Instruments Act in effect in Minnesota, the Frederick Lee Company admitted that it executed and delivered the trade acceptance to Cosmo in payment for merchandise purchased from Cosmo, and that payment had been refused upon presentation at the Northwestern National Bank. By way of defense to the action, Frederick Lee Company alleged that the trade acceptance was executed and delivered to Cosmo with the understanding and on the condition that it would not be negotiated, or presented for payment except on delivery of the merchandise purchased. The merchandise was never delivered.

Mrs. Werger was the sole witness on her behalf, testifying by deposition. On direct examination her testimony was that she was engaged in the business of "financing accounts receivable and trade acceptances

and the like;" that in the course of this business she purchased the trade acceptance in suit from Cosmo on October 10, 1946, about two months before its maturity, for a consideration of $7,000; that the trade acceptance was delivered to her on the date of purchase; that, afterwards, she rediscounted it to one B. Schwartz, engaged in the same business in New York, delivering the instrument to him for a valuable consideration; that payment of the trade acceptance was refused when presented for payment; that, thereafter, B. Schwartz returned the instrument to her and she paid him its face value. She introduced in evidence the trade acceptance bearing the endorsement of Cosmo, executed by its president and secretary, and also her cancelled check, delivered to Cosmo and endorsed by its officers, in payment for the trade acceptance. On cross-examination she testified that when she purchased the instrument from Cosmo she made no inquiry concerning that corporation, but that she did investigate the responsibility of Frederick Lee Company. She said she had never before discounted any commercial paper for Cosmo, and was not acquainted with any of its officers. She did not know that Mr. Henry Weiner, referred to later in this opinion, was one of the officers of Cosmo. The trade acceptance was brought to her office by a Mr. Bank, then president of Cosmo, who was introduced to her by her husband.

The witnesses for appellee were Leland A. Redman, president of Frederick Lee Company; Charles M. Redman, the father of Leland, financially interested in the business of the corporation; and a handwriting expert.

Over the objections of appellant, Leland Redman was permitted to testify that the trade acceptance was delivered to Cosmo upon the faith of an oral agreement not to negotiate it, and upon the understanding that Frederick Lee Company would not be obligated to pay it until the merchandise in payment for which it was given was delivered to the Frederick Lee Company; and that the agreement between the parties was that the phonograph records would be shipped immediately. He said that when the shipment failed to arrive within a reasonable time, he made long distance calls to Cosmo, complaining of the delay in delivery, and that he received repeated promises that delivery would be forthcoming. About the 1st of December, 1946, the witness talked with one Nick Wells, then president of Cosmo, and told him if the merchandise was not delivered before December 17 the trade acceptance would not be honored.

About a week after this conversation Wells came to Minneapolis. At that time Wells told Redman that the trade acceptance was in the possession of a Mr. Weiner, who, according to the witness, was or had been chairman of the board of Cosmo. Wells suggested that, because of the delay in delivery of the phonograph records, five new trade acceptances in the amount of $1,500 each, payable at intervals in the spring of 1947, be executed and delivered to Cosmo in renewal of the one outstanding. This proposition was accepted by Redman on behalf of the Frederick Lee Company.

Wells returned to New York. In a letter dated December 16, 1946, mailed airmail, special delivery to Redman, Wells advised Redman that he, Wells, had been unable to determine "the situation with respect to the $7,500 trade acceptance that you discussed with me and the regularity of its negotiation." He suggested that Frederick Lee Company withhold payment on that trade acceptance. On December 19, 1946, presumably after the receipt of this letter from Wells, Redman caused the five renewal trade acceptances to be executed and mailed to Cosmo with the understanding, as in the case of the first acceptance, that they would not be negotiated by Cosmo. Cosmo went into bankruptcy about thirty days after the second set of trade acceptances was mailed to it.

Redman also testified that he knew the trade acceptances were negotiable instruments, and that shortly before the maturity date of the original trade acceptance he advised the bank not to honor it. When he was notified by the bank of its presentation for payment, he was in a hospital and

did not see the trade acceptance. He could not say by whom it had been presented for collection.

Charles Redman testified, over appellant's objection, that on request of his son he made a trip to New York about the 29th of March, 1947, and there saw the trade acceptances in the possession of Weiner. He went to New York to recover the $7,500 trade acceptance because of the failure of Cosmo to deliver the merchandise in payment for which it was executed. His son had not told him prior to the trip of the existence of the five $1,500 trade acceptances. This witness testified that Weiner refused to surrender the trade acceptances and refused to let him inspect them. Instead, he said that in the interview Weiner held a number of trade acceptances in his hand—"He held them in his hand and waved them." Weiner said the trade acceptances had cost him $400,000 and he was not giving them up. Asked if he saw the trade acceptance in suit well enough to identify it, the witness said, "Well, I have good sight in one eye. I think I read it correctly." The witness was sure that the instrument was the $7,500 acceptance, and that the other acceptances of the Frederick Lee Company which he saw were for the amount of $2,500 each, and that there were four of them.

In her complaint appellant charged that the five trade acceptances in the amount of $1,500 each were delivered to Cosmo upon the agreement and understanding that, on payment, the proceeds would be applied to the payment of the $7,500 acceptance; that appellee refused to pay any of the five trade acceptances; and that when presented by her on their maturity dates payment was refused. The answer contained no denial of these allegations. It is not contended by the appellee that any payment was made on account of any of the trade acceptances. They appear in the record as exhibits to the testimony of Leland Redman. Except for the dates of issue and maturity and amount, they are exactly like the original $7,500 acceptance. Each bears the endorsement of Cosmo, executed by officers of that corporation.

The testimony of appellee's handwriting expert, likewise received over the objection of appellant, was that the signatures of the appellant, Mrs. Werger, appearing on her deposition and on the check given to Cosmo in payment for the $7,500 trade acceptance, were not the same as her endorsement which appears on the back of the acceptance.

At the conclusion of all of the evidence, both parties moved the court for a directed verdict. Both motions were denied. The case was submitted to the jury, which returned a verdict for the appellee on which the judgment appealed from was entered.

The only question for decision and the only question argued by either party on this appeal is the sufficiency of the evidence to justify submission to the jury of the question whether appellant was a holder in due course of the negotiable instrument in suit.

We think it clear beyond dispute that the trial court should have directed a verdict for the appellant. The decisions of the Minnesota courts, as well as the decisions of this court applying Minnesota law, compel that conclusion. Kintyre Farmers' Co-op. Elevator Co. et al. v. Midland National Bank of Minneapolis, 8 Cir., 2 F.2d 348, a case in which the defenses, as here, were the agreement of the payee of a negotiable instrument not to negotiate it and the failure of consideration; Midland National Bank of Minneapolis v. Farmers' Co-op. Elevator Co., 157 Minn. 348, 196 N.W. 275, a case in which one of the defenses against an action on a negotiable instrument by a holder in due course was an alleged parol agreement that the note would not be negotiated. In the trial court evidence was received, over objection, tending to show the agreement. The court said, 196 N.W. 277:

"* * * The evidence was clearly inadmissible for such purpose. We are unable to conceive of any way in which to more flatly contradict the terms and legal effect of a written instrument by parol. This rule is so well established that it should require no citation of authorities."

In United States Mortgage Company v. Hotel Radisson Company, 161 Minn. 231, 201 N.W. 318, a trade acceptance was accepted by the defendant in March 1921 in payment of the purchase price of a motor

truck to be delivered by the 1st of September. The holder of the acceptance promptly negotiated it. The truck was not delivered. The seller of the motor truck went into bankruptcy shortly after the maturity of the trade acceptance. The case can not be distinguished on the facts from the present case. The judgment in the trial court for the defendant in the action was reversed by the Supreme Court of Minnesota, the court holding that mere proof of the alleged parol agreement not to negotiate the trade acceptance was no defense against a holder in due course.

In Veigel v. Johnson, 163 Minn. 288, 204 N.W. 36, 37, the court held that "A valid executory agreement is a sufficient consideration for commercial paper," and that the payee of a note supported by such a consideration and delivered to payee upon his promise not to negotiate it could, nevertheless, use the note as he pleased, negotiate, sell, or pledge it as collateral security; that the proof of the parol agreement not to negotiate and its breach by the payee was not evidence that the note had been negotiated under circumstances which amounted to fraud. In the present case the consideration for the trade acceptance was the agreement of Cosmo to deliver the phonograph records, at or before maturity of the trade acceptance. Appellant acquired the trade acceptance long before the agreed delivery date, while the trade acceptance was in all respects outstanding and valid. See also Olsen v. Hoffmann, 175 Minn. 287, 221 N.W. 10, 12, explaining the case of Bank of Montreal v. Richter, 55 Minn. 362, 57 N.W. 61, relied on by appellee; Brown Fruit Co. v. Gotham Factors Corporation, 8 Cir., 97 F.2d 458; Mack v. Dailey, 2 Cir., 3 F.2d 534, cited with approval by the Supreme Court of Minnesota in Bergheim v. McRae, 190 Minn. 571, 252 N.W. 833, 834.

 The evidence is that the trade acceptance sued on was complete and regular on its face, that the appellant became the holder of the trade acceptance before maturity, and that she took it in good faith and for value without notice of any infirmity in the instrument or defect in the title of Cosmo. Under the evidence appellant meets every test of a holder in due course as defined in the Negotiable Instruments Act, Minnesota Statutes, §§ 335.-201, 335.211. The alleged parol agreement that the trade acceptance would not be negotiated was inadmissible and should not have been received. The evidence of the handwriting expert concerning the variations in signatures of appellant was without significance on any issue in the case, as well as were the facts, to which the court gave emphasis in its charge to the jury, that appellant made no inquiry concerning the financial responsibility of Cosmo, sued appellee instead of Cosmo, and that the trade acceptance showed on its face that it was given in payment for merchandise.

The judgment of the district court is reversed with directions to enter judgment for appellant.